THE STATE *vs.* WILLIAM TOWERS, STREET COMMISSIONER.

First Judicial District, Hartford, March Term, 1899.   ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Mandamus is in this State so far a prerogative writ that it ought regularly to issue only in the name of the State.   But where the injury complained of in the application affects only a private individual or corporation, the latter should be named therein as the relator.

Whenever the performance of a municipal duty is sought to be enforced by mandamus, the writ should be directed to that officer or board which is charged with the execution of the required act.   If there is no such officer or board, the writ may be directed to the municipality by its corporate name.

A writ of mandamus ought not to issue unless it is within the legal power of the respondent to perform the act commanded.

A resolution of the General Assembly authorized a telephone company to place and maintain its wires in underground conduits in any highway, and to construct and maintain manholes and ventilating shafts in connection therewith, provided such structures should not interfere with the ordinary use of the highway; and further prescribed that whenever the company should enter upon or open any highway, it should conform to such regulations as the municipal authorities might make respecting the work to be done, and should restore the highway to its former condition.   *Held* that the authority thus conferred, when construed in the light of the higher governmental duty imposed upon the municipality to build and maintain safe highways for public travel, and of the control over its streets given to it by its charter, did not vest in the telephone company an absolute right to build underground conduits and ducts for its exclusive use and under its exclusive management in the city streets; nor prevent the common council of the city from making regulations whereby other overhead wires should be taken into the conduits and ducts of the telephone company, or whereby all the wires should be taken into conduits built by the city; and that the city might properly refuse its consent to the excavation of its streets by the telephone company until a reasonable time had elapsed in which to determine upon the best method of placing all the wires underground.   *Held* also, that mandamus would not lie against the street commissioner, who was merely the appointee and servant of the common council.

Argued March 9th—decided March 30th, 1899.

APPLICATION by the State's Attorney for Hartford County for a writ of mandamus requiring the street commissioner of

the city of New Britain to give his written consent to the excavation of a certain street for the purpose of laying telephone ducts and wires, brought to the Superior Court in Hartford County and tried to the court, *Thayer, J.,* upon demurrer to the respondent's return; the court overruled the demurrer and, upon the refusal of the relator to plead further, rendered judgment denying the application, and the relator appealed for alleged errors of the court. *No error.*

The application referred to the charter of the Southern New England Telephone Company as found in Vol. IX, p. 605, of the Special Laws, and to an amendment of its charter as set forth in Vol. X, p. 837, Special Laws, and alleged that the said company had done and was ready to do all those things which, under its said charter and the said amendments, entitled it to have, and made it the duty of the defendant to issue to it his written consent to lay its " wires, and conduits for its wires, in, through and under any public street " in the city of New Britain; and that the said company had made request to the defendant to give his written consent therefor, which he refused. The State's Attorney moved the court to issue a writ of mandamus requiring the defendant to give his written consent as aforesaid.

The court issued an alternative writ which was duly served, and on the day named the parties appeared in court and the defendant made return as follows:—

" Said William Towers, street commissioner of the city of New Britain, in obedience to a rule of this court ordering him to give his written consent as such street commissioner to the Southern New England Telephone Company for the opening and excavating by said company in Church street in said city of New Britain, on the north side thereof between Elm and Main streets, in order that the said Southern New England Telephone Company may put into such openings and excavations a conduit, underground, for the purpose of laying and holding therein ducts and telephone wires, and may also build and maintain manholes to said conduits, and may also put in said openings and excavations lateral ducts or small conduits,

running from the main conduits to the curb, or signify cause
to the contrary thereof to this court on the first Tuesday of
December, A. D. 1898, now appears in court, and for cause
why his written consent should not be given as above stated,
shows as follows, to wit: 1. The city of New Britain was in-
corporated by an Act of the General Assembly of this State,
approved July 15th, 1870, which Act was duly accepted by a
majority of the freemen of the borough of New Britain, at a
meeting held on the 13th of January, 1871, which acceptance
was ratified by an Act of said General Assembly, approved
June 16th, 1871. 2. Said city was re-incorporated by an Act
of the General Assembly, approved April 14th, 1885, which
Act was in full force from the date of said approval until
June 6th, 1895. 3. Said city was re-incorporated by an Act
of the General Assembly, approved June 6th, 1895, and by
the provisions of said Act, as well as by the provisions of the
Act approved April 14th, 1885, the common council of said
city had, and there is still vested in it, the sole and exclu-
sive authority and control over all streets and highways,
and over all parts of streets and highways within the limits
of said city. 4. And by the provisions of such Act, as well
as by the provision of the Act approved April 14th, 1885, the
common council of said city was authorized to pass orders
and ordinances concerning the excavation or opening of
streets, highways, or public grounds in said city for public or
private purposes, and the location of any work therein,
whether temporary or permanent, upon or under the surface
thereof. 5. Chapter XXI, § 8, of the ordinances of said city,
passed by the common council of said city pursuant to the
power given it by the provisions of said Act of 1895, pro-
vides, 'that every person who shall without the consent of
the street commissioner or of the common council, dig up or
excavate any portion of the streets, highways, sidewalks, or
gutters of said city, or shall place therein any earth, stones,
rubbish, or other obstruction to the public use or travel, or
shall assist or abet in any of said acts, shall be guilty of a
misdemeanor, and shall for such offense pay a penalty of ten
dollars'; and said ordinance was in force on and prior to the

8th day of May, 1898, and has ever since been and now is in full force and effect, and this defendant denies that § 9, Chapter XXI, of the ordinances of said city referred to in the alternative writ, is the only ordinance of said city concerning the opening of streets for said purpose of laying pipes, wires, or sewers therein; but the only ordinances conferring any power upon the street commissioner to give his consent to opening or excavating streets for said purposes, are in Chapter XXI, §§ 8 and 9. 6. The street commissioner of said city is appointed by the common council thereof, and is subject to the orders and directions of said common council. 7. The said Southern New England Telephone Company has never obtained the consent of the city of New Britain or of the common council thereof to lay and maintain underground wires, conduits, and ducts, or any underground work whatever, in Church street in said city, between Elm and Main streets, and for that purpose to make excavations and openings in said street or any portion thereof, but, on the contrary, on the 8th day of May, 1898, said telephone company applied to the common council of said city for permission to open the surface of Church street from its intersection with Elm street to its intersection with Main street for the purpose of laying ducts, building manholes, handholes, and curb lateral ducts to contain the wires of said company, and permission was refused by said council, and no further application has been made to said council for like permission since the refusal of the application on May 8th, 1898. 8. The portion of Church street referred to in said application of May 8th, to the common council of said city, was the same portion referred to in the application made to this defendant on the 4th of November, 1898, and the permission sought of and refused by said common council, was for the same work for which permission was asked of this defendant in the application of November 4th. 9. The city of New Britain has a population of twenty-five thousand and upwards, and there are in and along the streets of said city, including Church street between Main and Elm streets, other than the wires of said telephone company, overhead wires for telephonic, telegraphic,

fire alarm, and electric lighting purposes. Church street is one of the main thoroughfares of said city, especially between Main and Elm streets, and that portion of said street has at much expense been macadamized by said city and is extensively used for public travel. 10. Said city desires so far as practicable to get underground all the overhead wires now in use in said city, but it desires to attain that end by a plan whereby there shall be as few conduits and ducts as possible, and whereby public travel upon the streets and highways, and the sewers and gas and water pipes under the surface of said streets, shall be the least interfered with; and the common council of said city does not deem it for the best interests of said city or of the public that the Southern New England Telephone Company shall lay its conduits and ducts for its exclusive use and under its exclusive control without any regard to a uniform system that may be adopted for all the wires in said city or the greater part thereof. On or about the 16th of February, 1898, the common council of said city appointed from its own body a committee to investigate the subject of the provision by the city of a conduit or subway in the central portion of the city into which should be placed the wires of the various telegraph, telephone, and electric lighting companies as well as the city fire alarm, and on or about the 16th of March, 1898, said Southern New England Telephone Company made application to said council for permission to open certain streets in the central part of said city, including Church street between Main and Elm streets, for the purpose of laying conduits and ducts for its wires, and said application was heard by the committee; said common council through its said committee signified to said telephone company its willingness to consider and adopt, under reasonable regulations, plans relating to said underground wires, and the laying of conduits and ducts for the use of the wires of said company and for other overhead wires in said city, but said telephone company insisted that under the said amendment to its charter it had the absolute right to lay conduits and ducts for its exclusive use and under its exclusive control, and refused to submit to any regulations that might

be made by said council whereby other overhead wires should be taken into the conduits and ducts of said company, or whereby the wires of said company should be taken into the conduits built by said city; wherefore, said council, acting as it claims in the interest of and under the power given it over the streets and highways of said city, on the 4th of May, 1898, refused the application of said telephone company and refused also a subsequent application of said company made on or about May 8th, 1898, to open Church street between Main and Elm streets, for the purpose of building conduits and ducts for its wires. Said telephone company insisted that its application made to this defendant on the 4th of November, 1898, should be granted without any regulations restricting the exclusive use and control by it of its conduits and ducts. 11. Said common council since the said application of said telephone company has had and still has under consideration the matter of underground wires in said city, and is by a proper committee investigating the plans and methods in use in other cities, and intends within a reasonable time, which has not yet expired, to make by a proper ordinance reasonable regulations for putting underground as many as possible of the overhead wires now in use in said city, in such manner as to interfere as little as possible with the use of the streets for public travel and other purposes. 12. Wherefore, for each and all the causes and reasons herein set forth, the defendant insists that a writ of peremptory mandamus should not issue as prayed for in said application, and prays the judgment of the court that he may be hence dismissed."

To this return a demurrer was filed, assigning various reasons therefor. Upon hearing the court overruled the demurrer, found the issue for the defendant and that the return was sufficient, and, there being no further pleadings, adjudged that a peremptory writ be denied. The State's Attorney appealed to this court. The only error assigned is that the court erred in overruling the said demurrer.

*John W. Alling* and *James T. Moran,* for the appellant (relator).

*Frank L. Hungerford,* for the appellee (respondent).

ANDREWS, C. J.   The application in this case is brought
in the name of the State's Attorney alone.   It would have
been in better form had the Telephone Company been named
as the relator.   The injury complained of was one which af-
fected that company only ; it did not affect many persons in
common, nor the public generally.   In such cases the party
injured is properly named as the relator.   The writ of man-
damus is in this State so far a prerogative writ that it ought
regularly to issue only in the name of the State.   *Lyon* v.
*Rice,* 41 Conn. 245 ;  *Peck* v. *Booth,* 42 id. 271 ; or by special
authority of the State, as in *Woodruff* v. *New York & N. E.
R. Co.,* 59 Conn. 63. .  But it is issued in cases where there
is a private right to have a public duty performed, and where
there is no other adequate remedy.   *Bassett* v. *Atwater,* 65
Conn. 355, 361 ;  *Brainard* v. *Staub,* 61 id. 570.   In these
cases the party aggrieved should be the relator.   High on
Ex. Rem. § 430.   The point is not of any consequence in
this case.   The Telephone Company, although not named as
such in the application, has been treated and spoken of as the
relator during the whole proceeding ; and we have followed
the same terms.

It is undoubtedly the true rule that wherever the perform-
ance of some municipal duty is sought to be compelled by a
writ of mandamus, the writ should be directed to that officer
or board of the municipal government which is specially
charged with the performance of the thing ordered to be done.
*Farrell* v. *King,* 41 Conn. 448 ;  *State's Attorney* v. *Selectmen
of Branford,* 59 id. 402 ;  *State ex rel. Judson* v. *County Com-
missioners,* 68 id. 16 ;  *Williams, State's Attorney,* v. *New Haven,*
ibid. 263 ;  *State ex rel. Bulkeley* v. *Williams, Treasurer,* ibid.
131.   If the municipal corporation has no such officer or
board, then the writ may be directed to the municipality by
its corporate name.   *Williams, State's Attorney,* v. *New Haven,
supra;* Dillon on Mun. Corp. § 861, and note.   But manda-
mus confers no new authority, and it must appear from the
record that the party to be coerced has power to perform the

act commanded. *Brownsville* v. *Loague,* 129 U. S. 493, 501; and without such power the writ ought not to issue.

In looking through the present record we do not find that Mr. Towers, as the street commissioner, was charged with any duty or had any authority to give to the relator any written consent to do in Church street in said city those things which the relator claims the right to do there. The alternative writ does not show such power, while the return expressly denies that Mr. Towers had any such authority or any authority at all in the premises, independently of the common council whose servant he is, and alleges that the common council had refused permission to the relator to put its wires into said street. The conduct of the relator itself in this behalf would indicate that its legal advisers did not quite believe that the present defendant had the power to give it the permission it asked. It made application in the first place to the common council for permission to lay its pipes in Church street, and was refused. It then applied to the present defendant. The defendant is the servant of the council, and has no authority except such as that board gives him. The common council had not given him authority to consent to the relator's claim.

The amendment to the charter of the relator under which it makes its claim, is this: "Section 1. The Southern New England Telephone Company, a corporation organized under an Act of the General Assembly of Connecticut (approved April 19, 1882), is hereby authorized to lay and maintain its wires, and conduits for its wires, in, through, and under any public street or highway in any city, borough, or town in which said company now maintains, or may hereafter maintain, its telephones and wires and it may construct and maintain manholes and ventilating shafts in connection with such conduits, provided such wires, conduits, manholes and shafts are so constructed that when completed they will not interfere with the ordinary use of such streets and highways by the public, and provided that in the construction of such conduits and the laying of such wires no gas or water pipes and no sewer shall be removed or changed in such manner as to interfere with the uses for which such pipes and sewers have been laid.

Sec. 2. Whenever said company shall enter upon or open any street or highway under the provisions of the foregoing section, it shall conform to such regulations of the common council of any city, the warden and burgesses of any borough, or the selectmen or other authorities of any town, as they may prescribe concerning the opening of streets for the purpose of laying pipes, wires, or sewers therein; and when the work of laying such wires and conduits has been completed in any . town, borough, or city, it shall be the duty of said company to restore the streets or highways in which such wires or conduits have been laid to as good condition as they were when said streets were so opened for said purposes, by said company, to the satisfaction of the authorities thereof."

The relator insisted that, under the aforesaid amendment to its charter, it had the absolute right to lay conduits and ducts for its exclusive use and under its exclusive control, in the streets of New Britain and especially in Church street, and refused to submit to any regulations that might be made by the common council of said city whereby other overhead wires should be taken into the conduits and ducts of said company, or whereby the wires of the said company should be taken into the conduits built by the city. The relator said that by the proper construction of its amended charter it had the right to so insist, and that it was the duty of the authorities of the said city to give it permission so to do, without any regulation restricting its exclusive use and control of its conduits, wires and ducts.

We are not able to agree with the relator in this construction. While the relator is a public corporation in the sense that it must give all persons the same measure of service for the same measure of money, yet in the sense that it performs any public duty or any public service, it is not a public corporation. It renders no service for which it does not require full pay. It is not seeking to put its wires underground in Church street in the city of New Britain, or in any other street, from any public motive. It is seeking to make gain. It is acting not upon compulsion, but for its corporate profit. It seeks to increase its private income. If it does any public

benefit, that is merely incidental. The right which it has to lay its wires under ground in the highways, however it is to be exercised, is to it a valuable franchise for which it has paid nothing. It is a franchise the granting of which encroached to some extent upon the rights of the public in the highways. All such grants must be strictly construed against the grantee. *Wisconsin C. R. Co.* v. *United States*, 164 U. S. 190, 202; End. on Interp. of Stats. 354.

The primary purpose for which a street is laid out and maintained is for a highway, a place common to all for passing and repassing on foot and in vehicles, at their pleasure or as their needs may require. The State imposes the duty to lay out all necessary highways and to maintain them in a reasonably safe condition, on towns and such other municipalities as have the care of highways. And to enforce the performance of this duty a statutory liability rests upon the town or municipality. This duty and liability rested on the city of New Britain in respect to Church street, both by its charter and by the public law.

Every time a street is excavated to lay therein a sewer, a gas pipe, or a water main, or any other underground pipe or conduit, for the time being that part of the street is made unsafe for public travel. Every time these pipes or conduits need to be repaired, and every time a householder on the street desires to make a connection with any one of these pipes, the street must be dug up, and for a limited time the street is made unsafe. If, in respect to any of these excavations, the municipal authorities should be negligent as to guarding them or warning travelers of their existence, the municipality may be compelled to pay damages to any one injured thereby. Of course the greater number of these underground pipes or wires there are, the greater is the burden of the municipality, and the greater the vigilance which the authorities must exercise. The city of New Britain is in respect to its highways like every other town in the State. It rests under an obligation to keep all its highways in reasonable repair. All the towns are compelled to act in this be-

half without compensation or pecuniary profit. The sole motive is the public good.

So long as the legislature leaves this duty and liability in respect to highways resting upon towns, as it now does, it is not to be supposed that any right will be given to the relator or other like corporation to do anything in a highway whereby the burden of that duty and liability will be increased, unless such right is exercised under the control and regulation of those officers in the town or city who are charged with the duty of taking care of the highways. So long as this liability remains, the authority of the town in respect to its highways must be deemed to be superior to any other.

We think the amendment of the relator's charter should be construed in the light of the considerations we have mentioned. So construed, it does not take away from the town authorities their superior right of control over the highways. So construed, it does not give to the relator in respect to highways the power which it claims.

The return sets forth that there are in the streets of New Britain, other than the wires of the relator, overhead wires for telephonic, telegraphic, fire alarm, and electric lighting purposes; that said city desires, so far as is practicable, to get underground all the overhead wires now in use in said city, but it desires to attain that end by a plan whereby there shall be as few conduits and ducts as possible, and whereby public travel upon the streets and highways, and the sewers and gas and water pipes under the surface of said streets, shall be the least interfered with; that the common council of the said city, through its proper committee, signified to the relator its willingness to consider and adopt, under reasonable regulations, plans relating to said underground wires of the relator and the laying of conduits and ducts for the passage of such wires. It further sets forth that the common council of the city "has had and still has under consideration the matter of underground wires in said city, and is by a proper committee investigating the plans and methods in use in other cities, and intends, within a reasonable time, which has not yet expired, to make by a proper ordinance reasonable regu-

lations for putting under ground as many as possible of the overhead wires now in use in said city, in such manner as to interfere as little as possible with the use of the streets for public travel." All these things are admitted by the relator by its demurrer to be true.

It seems to us that in doing the things so set forth, the common council is acting clearly within its authority, and that there is nothing in the amendment of the charter of the relator by which it can be required to do otherwise. We think the return shows a clear right to the defendant to refuse obedience to the alternative writ; and we think it would show an equally clear right to refuse, if the alternative writ had been addressed to the city, or to its common council, instead of to the present defendant.

There is no error.

In this opinion the other judges concurred.