NORTHWESTERN TELEPHONE EXCHANGE COMPANY v. TWIN CITY TELEPHONE COMPANY.[1]

June 12, 1903.

Nos. 13,367—(49).

## Telephone Line in City Streets.

In the absence of positive regulation by statute or ordinance controlling the construction of telephone lines in a municipality, the party first lawfully installing its lines acquires superior rights in the erection of poles and wires in streets which forbids a subsequent occupant for the same purposes to interfere therewith.

[1] Reported in 95 N. W. 460.

Prior Occupancy.

> The prior lawful occupancy of urban streets by a telephone company will not necessarily create a monopoly of all the aerial space which it appropriates, but may give such occupant such substantial rights in the conduct of its business as may be required in the growth and extension of the same to meet the immediate demands of the public service subject to the right of the courts to restrain another telephone company from unnecessary interference therewith.

Injunction against Interference.

> Under privileges granted by the city of Minneapolis, the plaintiff, in 1878, placed its poles and wires in the highways, and has from time to time maintained and extended the same to meet the necessary requirements of its business. In 1898, by authority of a charter from the city, the defendant crossed the lines of plaintiff upon poles at street intersections and placed its wires immediately thereunder, in such a manner as to interfere with the prior occupant in the necessary use of its franchise. *Held*, that such erection and maintenance of its poles and wires by defendant was an illegal impairment of the plaintiff's rights, which may be restrained by injunction.

Appeal by defendant from an order of the district court for Hennepin county, Elliott, J., denying a motion for a new trial. Affirmed.

*H. H. Potter*, for appellant.

*Geo. D. Emery, A. K. Wheeler* and *D. F. Morgan*, for respondent.

LOVELY, J.

In this suit the Northwestern Telephone Exchange Company seeks to restrain defendant from alleged unlawful interferences with its lines and wires as previously established in the city of Minneapolis. The cause was tried to the court, who, upon findings of fact, held, as a conclusion of law, that the construction by defendant of its poles and wires under the wires of the plaintiff company as then maintained by the latter at the same places was an impairment of its rights, also that the defendant's use of a certain alley was improper, and ordered an injunction to restrain defendant from the continuance thereof.

There was an extended presentation of the evidence, which is embraced in a settled "case," but it was conceded here that the findings of fact were sustained by the evidence. It is, therefore,

only necessary to determine whether the conclusions of law thereon are well founded. The findings of fact are quite lengthy, and we shall only attempt to condense the results. In 1878, the plaintiff, under the provisions of G. S. 1878, c. 34, § 42, lawfully established its telephone system in the city of Minneapolis, and occupied its streets with lines strung upon cross-arms placed upon poles in the customary manner. Until the commencement of this action it has continued such occupancy, and extended its business so that it serves many thousand subscribers in the city, and connects its exchanges with outside cities and villages to such an extent that in the aggregate it has more than forty-three hundred miles of pole lines on which were strung two hundred twenty-two thousand miles of wire within the state. In the construction of plaintiff's lines within the city, the poles vary in height from thirty to seventy feet, set firmly in the earth from one hundred to one hundred fifty feet apart. At the upper end of the poles were attached cross-arms from six to twelve feet in length at intervals of eighteen inches apart, each pole carrying from two to twelve of these cross-arms, on which were the wires. The erection of these poles and wires was authorized by the city under an ordinance which required previous application therefor directly to the city engineer. This ordinance is set forth and considered at length in Northwestern Tel. Exch. Co. v. City of Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69.

In 1898 the Twin City Telephone Company, defendant, incorporated, and obtained from the city of Minneapolis the right to use its streets and alleys for the purpose of erecting its poles and wires therein. It so placed its lines that in many instances at street crossings they intersected at right angles the lines of plaintiff immediately thereunder, of which rights and location defendant had ample notice. The relation of the poles, cross-arms, and wires at the street intersections referred to are specifically designated by the court in its findings, but, in view of the conclusion we have reached, it is not necessary to refer incidentally to the distances between the several cross-arms and wires of the two companies as they are respectively maintained. It was found,

89 M.—32

however, that in repairing the plaintiff's lines and in adding new wires thereto the presence of the intersecting lines as maintained by the defendant rendered it more dangerous, difficult, and expensive for the plaintiff to add to or replace its own lines, as is continually necessary in the conduct of its business, to its injury, which is impossible to estimate in damages; that in the use of the plaintiff's system as established and conducted in the city during the past ten years the demand for its services renders it necessary continually to increase the number of its cross-arms and lines in the localities directly affected, and requires it at the present time to add many new cross-arms and wires below those actually constructed to supply the necessary demands of the public service, and to meet such requirements the plaintiff does not occupy any unreasonable amount of space for that purpose; also that it is the common practice and usage in the construction of telephone lines and wires in urban localities, whenever one line passes another at street intersections, for the party desiring to pursue that course subsequent to the location and use therein by a prior occupant to construct the same above the lines previously established and maintained; that it is practicable, and would involve but slight additional expense, for the defendant to have constructed its lines by the use of higher poles at the points of intersection, and thus avoid interference with any part of the space appropriated by the plaintiff for its proper use, and that it is now practicable for the defendant to replace its poles at such places with higher poles in such a way that it will not interfere with plaintiff's previous use, or with the usual or necessary extension of its business; that such a course had actually been adopted and put in practice at many places in the city by the plaintiff itself where it was required to cross the electric lines of the city railway as previously maintained by that company. It was further found that in certain instances the defendant had placed its wires in such a position as to come in actual contact with the poles, if not the wires, of the plaintiff, and that upon one alley defendant so placed its wires as to pass through the wires of the plaintiff's lines where the defendant's poles were higher than those of plaintiff in such a way that they touched and directly interfered therewith.

It ought not to be and is not the purpose of this court to adopt any rule that will give to a telephone company a monopoly of aerial space in the maintenance of its poles and wires to cut off and deny competition, and we are not inclined at this time to pass upon plaintiff's claim that by the erection of its poles it had acquired a right to all the space between the lowest cross-arms thereon above the highways which can be utilized for the erection and maintenance of wires without reference to immediate future necessity, the apparent requirements of its business, or the obvious demands of the public service; but upon the facts as found by the court it appears that the erection and maintenance of its poles and wires by defendant at the street intersections referred to are an undoubted interference with the practical conduct of its business by plaintiff and the useful and necessary enjoyment of its franchises, which ought not to be permitted. We cannot agree with the claim of defendant that this is a question entirely within the purview of the municipality, and not a subject for review by the courts. Whatever rights the plaintiff has acquired by previous occupancy superior to those of defendant are valuable and substantial, and by the strongest sanctions of the organic law should be protected.

There is nothing really new in the claim of plaintiff, for it rests upon principles that have always existed, and must always exist, where conflicts arise between the rights of those engaged in the service of the public, or between private persons; for no one has a right to use his own to the detriment of another. The rightful occupancy and enjoyment of privileges may not create a monopoly, but will endow the user with benefits which he has a right to rely upon, and to that extent have been recognized by the courts. As between two corporations exercising similar franchises upon the same street, priority, though it does not create monopoly, carries superiority of rights, and equity will adjust conflicting interests, as far as possible, controlling them, so that each company may exercise its own franchise as fully as is compatible with the necessary rights of another's. But, where interference is unavoidable, the latter occupant must give way. Edison v. Merchants, 200 Pa.

St. 209, 49 Atl. 766; Paris v. Southwestern (Tex. Civ. App.) 27 S. W. 902; Bell v. Belleville, 12 Ont. 571.

While it is probable that a first constructing company might desire to secure rights to itself that would create a monopoly of space by erecting its poles to such a height as would render it impossible to go over its wires, neither the evidence nor the conclusions of the court show this to have been done by the plaintiff, and where a rivalry exists that creates such a situation the relative privileges of each occupant may be determined by statute or ordinance, and this seems to have been done in the present instance by the regulation that the poles and wires of the plaintiff be placed under the direction and approval of the city engineer; but the courts must, when necessary, so control the actions, and relative rights of the parties as to protect each in the enjoyment of its franchises, recognizing, however, the benefits which accrue by reason of the prior occupancy.

In the disposition of this action we do not go further than to hold that to the extent of the use of its pole lines and wires at the street intersections and in the alley referred to there was an impairment of plaintiff's rights which justified its interference.

Order affirmed.