## The New Hartford Water Company *vs.* The Village Water Company.

First Judicial District, Hartford, May Term, 1913.

Prentice, C. J., Thayer, Roraback, Wheeler and Beach, Js.

An intent on the part of the legislature to grant a private corporation the exclusive right to open public highways and lay its water pipes therein, will not be presumed where the language of the grant is general and the exclusive right is not given in express terms.

Such a grant is to be most strictly construed against the grantee, and will be held to confer only such rights as are given in express terms or by clear implication.

Whether a corporation is lawfully organized, has duly acquired its property and rights, or is exceeding its charter powers, are questions which can be raised only by its stockholders, by the State, or by those who receive some special damage from the alleged *ultra vires* acts.

A finding that the defendant has not done and does not propose to do any acts that have or will work any actual or serious injury to the plaintiff in the management or maintenance of its water system, precludes the plaintiff from raising any of the aforesaid questions.

The possibility of injury to the pipes of an older water company from the proper laying and repair of the pipes of a similar company subsequently chartered, is merely an incident to the maintenance of

pipes in the same street by different companies, and is therefore one that the former company must be held to have contemplated and assumed when it accepted its charter; accordingly, the existence of such a possibility affords it no legal ground for asking for an injunction to restrain the later company from laying and maintaining its pipes in the highways as authorized by its charter.

The charter of the defendant authorized it to supply water to those persons who had previously been supplied by its predecessor, a voluntary association, by distribution from a certain dry-well. *Held* that such authority warranted it in furnishing water to several persons who had theretofore received it from the main supply pipe by tapping that pipe a few feet above the dry-well.

Two of the defendant's customers were the owners of places which were being supplied with water by the voluntary association when the defendant's charter was granted. *Held* that that as "successors and assigns" of the former owners of the same places, the defendant had a right to supply them with water.

Argued May 6th—decided June 13th, 1913.

SUIT to restrain the defendant from digging up the streets in which the plaintiff's water mains were laid, from laying any of its own pipes therein over, under, or near those of the plaintiff, and from otherwise interfering with the alleged rights of the plaintiff, brought to and tried by the Superior Court in Litchfield County, *Greene, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

The plaintiff is a corporation created by special charter in 1889 (10 Special Laws, p. 804), "for the purpose of supplying the towns of New Hartford and Barkhamsted with pure water for public, domestic, and other uses," and is authorized and empowered by its charter "to open the grounds in any streets, lanes, avenues, highways, and public grounds, for the purpose of laying down and sinking or for repairing such pipes or conduits as may be necessary for conducting water to and distributing the same within" said towns.

The defendant is a corporation created by special charter in 1905 (14 Special Laws, p. 1072), "for the

purpose of supplying pure water for domestic and other purposes and uses, within the town of New Hartford, to such persons and corporations, their successors, heirs, and assigns, and to such houses, tenements, properties, and places," as were on July 18th, 1905, or prior thereto, supplied by a voluntary association known as the New Hartford North End Water Company "with water from a certain 'dry-well' hereinafter described," and is by its charter "authorized and empowered to open the grounds in any street, highway, or public ground in said town of New Hartford, for the purpose of laying down and repairing and replacing such pipes and conduits as shall be necessary for conducting and distributing water to the persons and corporations, and to the houses, tenements, properties, and places specified."

The plaintiff, in 1894, established a water system, erecting a dam across Steele Brook, making a small reservoir, and extending its mains through substantially all of the streets of the villages of New Hartford and Pine Meadow in the town of New Hartford; and has entered into agreements with the New Hartford and Pine Meadow fire districts to furnish them with water for fire protection purposes, and has endeavored to supply people living along the line of its mains with water.

The incorporators of the defendant were "Walter C. Woodruff, Walter M. Smith, Clarence E. Jones, Thomas E. Myers, and such others as are now associated as The New Hartford North End Water Company, a voluntary association, located in the town of New Hartford."

In 1825 Henry Seymour, a resident of New Hartford, being the owner of land through which Stone Brook flows, made a lease to certain other residents of the same place, of water rights in the brook, and these lessees carried water from this brook into the village of

New Hartford for their own use, and they, their successors, heirs, and assigns, have ever since used said water in the village of New Hartford. In 1891 the persons so using the water from this brook associated themselves by the name of The New Hartford North End Water Company, and since that association was formed have made no claim to any separate or individual right to said water, but have used and claimed it as members of the association or as takers of water from it. The defendant and its predecessors have been supplying, and the defendant is now supplying, a majority of the business blocks and buildings, and many of the residences, in the village of New Hartford, with water. The defendant and its predecessors have had various reservoirs on Stone Brook since 1825, and have distributed the water by pipes from the distributing point. This point, for about twenty years after 1860, was a cobblestone reservoir on the hill near Steele Road. Later, between 1890 and 1900, this was abolished, and the water was piped to the dry-well mentioned in the charter, which became the new distributing point. By this change Mr. Woodruff's house and a few other houses, supplied with the water, were left· above the distributing point, and were supplied by service-pipes from the main above the dry-well. After the granting of its charter, the defendant, on account of the inadequacy of its reservoir and the liability of the water therein to become contaminated by surface drainage, constructed a new dam and reservoir higher up the Stone Brook. The defendant has purchased water-pipes, and intends to lay them from its new dam and reservoir along a highway known as Town Hill Road and through other highways and streets to the bridge crossing Farmington River, and to connect the present pipes with the main supply-pipe so that the dry-well will be supplied by the new system of mains, and so that

the takers of water on the Steele Road will be supplied from the dry-well. A few days prior to the institution of this action it began to excavate and lay pipe in Bridge Street. The plaintiff has pipes laid in this street, but on the opposite side from that where the defendant was excavating, but in laying its pipes as proposed the defendant has already necessarily crossed the plaintiff's line in one place, and will probably cross it in three others. The defendant had a competent man in charge of the work, and an inspector to see that no damage was done to the plaintiff's property or rights, and at the time the defendant was enjoined by preliminary injunction it had not injured any of the plaintiff's pipes or property. The latter's water-pipes, owing to the pressure of water therein, are liable from time to time to break, and it is necessary that they should be immediately repaired. Where two lines of pipe cross, there is a possibility that in making repairs of either line at that point, some injury may be done to the other, but when care is used the danger of such injury is remote and immaterial. The pipes proposed to be laid by the defendant are to take the place of existing pipes laid in the same streets, except the main to be laid in the Town Hill Road, through which water from the new reservoir is brought into the village, to the point where that road meets the Steele Road, through which the old main from the old reservoir entered the village.

The court found that the defendant has not solicited any one to take water whom it had not a charter right to solicit, and does not intend to solicit or supply any one, or supply any place, not authorized by the terms of its charter, unless it be Mr. Woodruff and the two or three others who, at the granting of the charter, were as aforesaid taking water through service-pipes which tapped the old main above the dry-well; and that the defendant has not done and does not propose to

do any acts that have been or will be attended with any actual and serious damage to the plaintiff, or interfere with it in the management and maintenance of its water-system.

The court ruled that the plaintiff's charter confers upon it no exclusive right to use the streets of New Hartford for water-pipes; that the digging up of the streets and laying of pipes, as done and proposed to be done by the defendant, do not constitute such an injury to the plaintiff as should be restrained by injunction; and that in supplying the houses above the dry-well, which have never been supplied therefrom, but from the pipe which supplied the dry-well, the defendant had not exceeded its charter powers. From these rulings, and others which sufficiently appear in the opinion, the plaintiff's appeal was taken.

*Leonard J. Nickerson* and *Frank B. Munn*, for the appellant (plaintiff).

*Samuel A. Herman*, with whom were *Frederick A. Jewell* and *H. Rogers Jones*, for the appellee (defendant).

THAYER, J. The fundamental claim of the plaintiff is that the defendant, which is a corporation created by the legislature under a special charter, is exceeding its rights under its charter, and that special damage, for which the plaintiff has no adequate remedy at law, will result to it from the defendant's *ultra vires* acts, threatened and in process of execution at the time a temporary injunction was granted in this action. In support of this claim it says, in effect, that it has the exclusive right under its charter to lay pipes in the streets and highways of New Hartford, and that this right could not be impaired by the legislature by the

grant of the right to the defendant to lay pipes in those streets and highways.

The court properly ruled that the plaintiff has not the exclusive right claimed by it. Its charter does not in express terms give it such exclusive right. The language is general, giving it the right to open the streets and highways of the two towns named therein for the purpose of laying its pipes. An intention on the part of the legislature to grant a private corporation the right to open and lay its pipes in any and all the streets and highways of two country towns, to the exclusion of all other persons and corporations, will not be presumed. The grant is to be most strictly construed against the grantee, and held to confer only such rights as are given in express terms or by clear implication. 4 Thompson on Corporations (1st Ed.) § 5399; *State* v. *Towers*, 71 Conn. 657, 666, 42 Atl. 1083; *Northwestern Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659, 666. The cases cited by the plaintiff are those where an exclusive right was expressly given. In the present case the defendant's predecessors were occupying the streets wherein the plaintiff's pipes are laid, long before the latter was chartered, and had continued to maintain those pipes until the defendant was incorporated, as the latter has since, and through them has supplied a majority of the business blocks and buildings and many of the residences of the village. The plaintiff's acquiescence in this occupation and use of the streets for this long period is a strong indication that the claim to an exclusive right on its part to lay pipes in the streets is of recent origin. As the plaintiff has not an exclusive right, the legislature could properly confer upon others the right to open the streets and lay water-pipes therein.

Whether the defendant is exceeding its charter powers is a question to be raised only by its stockholders, or by the State, or by parties who receive some special

damage from the claimed *ultra vires* acts. *New England R. Co.* v. *Central Ry. & Electric Co.*, 69 Conn. 47, 58, 59, 36 Atl. 1061; *New Orleans, M. & T. R. Co.* v. *Ellerman*, 105 U. S. 166, 173.

The court has found that the defendant is proceeding with care to lay its pipes, that there was no evidence that any of its pipes would be laid over or under a pipe of the plaintiff, except where they might cross its line in four places, and that, in case of the removal or repair of one of the pipes at such places, while there is a possibility that some injury might be done to the other pipe, the possibility of injury to the plaintiff's pipes is remote and immaterial. Manifestly it is only the possibility which is incident to the maintenance of pipes in the same street by different companies. Such possibilities must have been contemplated and assumed by the plaintiff when it accepted its charter. But the defendant's charter gives it power to acquire land and water rights on Stone Brook, and to build, repair, and maintain such reservoirs as it may deem necessary for its purposes, and to open streets and lay down such pipes and conduits as shall be necessary to conduct and distribute water to the persons and places specified in the first section of the charter, that is, to those who had previously been supplied by distribution from the drywell. The defendant's acts in opening the streets for the purposes found by the court were within the powers thus conferred by the charter. If, therefore, the plaintiff will be specially injured by the possibility of damage arising from the crossing of its pipes by those of the defendant, this presents no ground for the relief prayed for.

Woodruff and two or three other persons on Steele Road, all of whom were members of the voluntary association of which the defendant is successor and are members of the defendant corporation, are supplied

with water by means of pipes connected with the main supply-pipe before it reaches the dry-well. They were being thus supplied at the time the defendant's charter was granted. By the new arrangement, they are to be supplied directly from the dry-well. The plaintiff claims that in supplying these persons with water the defendant is exceeding its powers, for the reason that they are not persons to whom the charter gives it power to furnish water, and that the plaintiff is damaged by being thus deprived of possible customers.

Strictly speaking, these parties were not supplied with water from the dry-well, and so not within the class to whom the defendant may supply water. But the dry-well was not a reservoir as the cobble-stone reservoir was which this replaced. It is simply a well from which, by means of a tee or otherwise, water was taken from the main supply-pipe by means of smaller ones through the different streets to the different takers. Tapping the supply-pipe a few feet above the dry-well, for the use of the parties on Steele Road, was substantially the same thing. It is not conceivable that the legislature should have intended to exclude these takers of the water, who are members of the defendant company, from the class to be thereafter supplied. No reason appears why this should have been intended. While the same rule applies in construing the defendant's charter which we have applied in construing the plaintiff's, we think it is clearly to be implied that the legislature did not intend to exclude these members of the corporation which it was creating from the class of persons for whose benefit it was created, that they are within that class, and that it was not a violation of its charter for the defendant to supply them with water.

A Mrs. Bossi and another person, who are not members of the defendant corporation, are being supplied

by it with water in excess of its powers under its charter, as the plaintiff claims. These persons are the owners of places which were being supplied with water by the voluntary association when the defendant's charter was granted, and so clearly fall within the class which the defendant can supply under its charter as the "successors and assigns" of those who at the time the charter was granted were being supplied at those places. The places being places which were at that time being supplied, the defendant is within its charter rights in supplying water at those places.

The court has found that the defendant has not done and does not propose to do any acts that have been or will be attended by any actual and serious damage to the plaintiff, or that interfere with it in the management or maintenance of its water system and charter rights. This finding precludes the plaintiff, for the reasons already stated, from attempting to question the validity of the defendant's organization, or whether it has properly acquired the property and rights of the voluntary association named and recognized as such in its charter.

This, and the view which we have taken of the defendant's rights under its charter, renders it unnecessary to consider the numerous requests for changes in the finding, all of which relate to the questions thus precluded or removed by our construction of the charter, as also the rulings upon evidence assigned for error by the appeal, which only bear upon the same questions.

There is no error.

In this opinion the other judges concurred.