ALLEN, Chief Judge
(concurring).
The majority opinion of the court cites the case of St. Joseph Telephone & Telegraph Co. v. Southeastern Telephone Co., 1941, 149 Fla. 14, 5 So.2d 55, 56, as a primary authority for reversing the lower court in this case.
The appellee herein astutely attempts to by-pass the impact of the decision of the Supreme Court of Florida in the St. Joseph Telephone case above cited, by alleging impending loss of profits of the appellee if the appellant is not restrained from competing with it in the Dade City trade territory. Appellee contends that infringement on its private right to do business is different from a public injury that would only justify intervention by the State to restrain the appellant from its ultra vires acts, and thus places appellee under the exception to the general rule enunciated in the St. Joseph Telephone case.
A loss of profits for a corporation from competition by another corporation, even though that other corporation is committing ultra vires acts, is not the exception noted by the Supreme Court in its St. Joseph Telephone opinion, supra. If so, every ultra vires act committed could be enjoined by a private party if it could be alleged and determined that this act would injure the business of such party, thus competition could always be enjoined as competition usually affects the profits of the party affected by such competition.
A member of this court questioned counsel of the appellee during oral argument of this case that if the acts complained of by the appellee had been committed by another public utility company regulated by the same authority as the appellee and not restricted as the appellant is by its charter powers, could the acts be enjoined, and the reply was that it could not. If this was *13 true, then the only party that could question such ultra vires acts is the State of Florida through its Attorney General or a stockholder of the cooperative appellant.
The question naturally arises what facts prevail in this case that brings it within the exception mentioned in St. Joseph Telephone & Telegraph Co. v. Southeastern Telephone Co., supra. In that case the facts, as set out in the opinion, are:
“In a suit brought by the Southeastern Telephone Company, it was in effect prayed that further construction of the poles and lines of the proposed telephone line of defendant, St. Joseph Telephone and Telegraph Company, be enjoined and restrained until some short day upon which a hearing can be set for the equities of this cause to be determined; that on final hearing the court will decree that defendant be permanently enjoined from constructing any telephone line into the territory now being served by plaintiff and in any territory whatsoever not authorized by law under the charter issued by the State of Florida to defendant, it being in effect alleged that defendant, St. Joseph Telephone and Telegraph Company, has no charter power under the laws of Florida to construct, maintain and/or operate a telephone line between the points and places sought or anywhere else in Leon or Wakulla counties, Florida, and that defendant has begun the erection of poles from a Wakulla county point towards Tallahassee in Leon county, Florida.”
The circuit judge enjoined the cooperative telephone company from further construction. Motions to dissolve were filed, which were denied by the lower court, and appeal was taken.
One of the questions involved in the St. Joseph Telephone case states:
“Does a public service corporation, with a franchise to do business in a certain locality, but not an exclusive franchise, have the right to question by injunction the extent of corporate power of .another public service corporation, with a franchise to do the same kind of business, solely for the purpose of keeping down competition ?”
The respondent, Southeastern Telephone Company, stated the question as follows:
“Can a court of equity in the State of Florida enjoin the construction of a telephone line in competition with another telephone line where the first mentioned telephone line has no franchise or authority to do business in a locality, or localities, county or counties, as to which the second company seeks injunctive relief because of the fact that it has an established going concern under franchise rights serving the localities sought to be served by the second company?”
In its opinion, the Supreme Court said:
“Under the law and practice in Florida, the State may invoke appropriate judicial remedies for an abuse or violation of corporate or franchise authority that is conferred pursuant to State law; but private parties or corporations may not invoke judicial remedies for an abuse of or a violation of, corporate or franchise authority conferred by the State. See Hitchcolk v. Mortgage Securities Corp., headnote 15, 95 Fla. 147, 116 So. 244; Vol. 10 Fletcher’s Cyclopedia of Corporations, secs. 4854 et seq.
“Where private property rights are violated by a private corporation, private parties or corporations may in general invoke appropriate judicial remedies against such corporation, upon proper and sufficient allegations and proof without raising the question of a wrong to State sovereignty. See Vol. 10, Fletcher’s Cyclopedia of Corporations, sec. 4856 et seq.; 19 C.J.S. Cor *14 porations § 981, p. 441; 13 Am Jur. 790 et seq., secs. 759, 764 et seq.
* sK * * * ‡
“While the validity and scope of the corporate franchise rights conferred upon a public utility company may not be tested in a suit brought by a private party or corporation, yet when property of a public utility corporation is trespassed upon or is unlawfully injured or endangered, or the public utility corporation is unlawfully and materially hindered in the performance of its duty in rendering its authorized public service, by a potential competitor or others, the law provides for obtaining relief or redress at the suit of the injured party, East Florida Telephone Co. v. Seaboard Air Line Ry. Co., 85 Fla. 378, 96 So. 95; and when the nature of the case warrants it under the law, and the facts are properly and sufficiently presented, appropriate judicial relief by injunction may be granted as provided by law and the principles of equity, without adjudicating the corporate franchise rights of a defendant corporation. Sec. 4856 et seq., Fletcher’s Cyclopedia of Corporations. See Northwestern Telephone Exch. Co. v. Twin City Tel. Co., 89 Minn. 495, 95 N.W. 460; New Hartford Water Co. v. Village Water Co., 87 Conn. 183, 87 A. 358.” (Emphasis ours.)
The Court, in the above case, then proceeds in its opinion to point out that the suit is based on allegations that the defendant telephone company does not have the power under its charter to lay out or build telephone lines in competitive territory of the plaintiff and that these allegations are not a necessary element in alleging irreparable injury to plaintiff’s property or to its capacity to render its public service, such allegations are not appropriate in a suit by a private corporation to raise an issue as to the corporate franchise right of the defendant corporation to construct, maintain and operate telephone lines in Leon and Wakulla counties.
The Court then states that the allegations do not show that the plaintiff is hindered or injured in its capacity to render its public service, that plaintiff does not allege an exclusive franchise corporate right, and cannot complain in the courts of competition.
The Court then issued certiorari and quashed the orders below.
By an analysis of the cases and texts cited by the Supreme Court in support of the exception above stated, we believe it can clearly be shown that the instant case does not come within the stated exception.
Section 4586 et seq., Fletcher’s Cyclopedia of Corporations, states in part:
“In so far as the ultra vires or illegal acts of a corporation result in injury only to the public interests or property, they are remedial only at the instance of the state, and a private person not specially injured thereby may not proceed on his own initiative and in his own name to have such acts enjoined.”
The first case cited by the Supreme Court is Northwestern Telephone Exchange Co. v. Twin City Tel. Co., 89 Minn. 495, 95 N.W. 460, 461. Northwestern Telephone sought to enjoin Twin City from interfering with its lines and wires that had been previously established in Minneapolis. The plaintiff Northwestern, pursuant to statute in 1878, instituted telephone service in Minneapolis and had since that time expanded its service. At the time the suit was instituted, plaintiff was serving several thousand subscribers in Minneapolis which, of course, necessitated many miles of line strung on hundreds of poles.
In 1898, defendant Twin City obtained permission from the city to install its poles and lines. It so placed its lines, however, that in many instances at street crossings *15 they intersected at right angles the lines of plaintiff immediately thereunder, of which rights and location the defendant had ample notice. It was found by the lower court that in repairing the plaintiff’s lines and in adding new wires thereto, the presence of the intersecting lines, as maintained by the defendant, rendered it more dangerous, difficult and expensive for plaintiff to add or replace its own lines.
The Supreme Court of Minnesota affirmed the granting of the injunction on the narrow basis of an interference with established rights by stating:
“As between two corporations exercising similar franchises upon the same street, priority, though it does not create monopoly, carries superiority of rights, and equity will adjust conflicting interests, as far as possible, controlling them, so that each company may exercise its own franchise as fully as is compatible with the necessary rights of another’s. But, where interference is unavoidable, the later occupant must give way.”
The second case cited under the exception by the Florida Supreme Court is New Hartford Water Co. v. Village Water Co., 87 Conn. 183, 87 A. 358. The plaintiff had been granted a franchise to furnish New Hartford and Barkansted water for public and domestic use. The defendant’s predecessor had furnished water on a voluntary basis prior to plaintiff being granted a franchise and on July 18, 1905, defendant was granted a franchise to furnish water to the same persons that were subscribers to the prior voluntary association. In 1904, the plaintiff had completed its underground pipelines and reservoir construction. Thus in 1905, when defendant began laying its waterlines, it of necessity had to place the underground lines along or near to plaintiff’s pipelines.
The plaintiff sought to enjoin the defendant on the basis that defendant was exceeding its corporate powers as established by special charter, and that plaintiff had an exclusive right to lay pipelines under the streets of New Hartford by virtue of its own prior special charter. The lower court refused the injunction.
The Supreme Court of Errors of Connecticut held that in order for plaintiff to have an exclusive right, it must be expressly provided in the charter, and since plaintiff’s charter did not contain such provision, plaintiff does not have the claimed exclusive right. The Court noted that only the stockholders of defendant corporation or the state, or parties who receive some special damage from claimed ultra vires acts have a standing to question whether defendant is exceeding its charter powers. After finding that the defendant had not in fact damaged plaintiff’s lines while installing its own pipelines, the Court affirmed the denial of the injunction. The opinion also points out in effect that if the Legislature wanted to exclude certain “persons” from subscribing to defendant’s service, the Legislature could have done so, and, in the absence of this provision, this legislative intent will not be presumed.
The other case cited by the Florida Supreme Court under the exception is East Florida Telephone Co. v. Seaboard Air Line Railway Co., 85 Fla. 378, 96 So. 95, 96. Seaboard sought an injunction against the defendant Telephone Company to enjoin the defendant from placing its telephone poles on plaintiff’s railroad right of way. It appears that the defendant had proceeded to install poles and string lines on plaintiff’s right of way without permission from or offer of compensation to plaintiff. The lower court overruled defendant’s demurrer to the complaint and defendant appealed.
Although the appeal was decided on the basis of telephone companies being granted power of eminent domain by section 4374, Revised General Statutes, 1920, the Supreme Court did cite the following principle :
*16 “The establishment of a telephone line of poles and wires upon a railroad right of way without consent or compensation duly secured is unlawful, and such establishment may under circumstances affording an equity be enjoined if timely and appropriate proceedings be duly taken.’ (Cases omitted.) (Emphasis ours.)
Considering these three cases together it is clear that a public utility, which does not have an exclusive franchise, and is first in its lawful occupation and special use of streets, public places, and right of ways, may ordinarily obtain injunctive relief against threatened acts of a competitor only when these threatened acts would actually damage a specifically owned property or property right. Illustrative instances when these injunctions have been granted are collected and reported in Annotation, 1939, 119 A.L.R. 432.
The complaint upon which the restraining order was predicated, filed by the plaintiff Tampa Electric Company in case No. 1002, states in part:
“3. That the plaintiff is supplying adequate central station service to the Valencia Motel and Restaurant location on U. S. Highway 301 near Dade City, in Pasco County, Florida.
“4. That immediately prior to the filing of this complaint, the plaintiff has been furnishing service to the Valencia Motel and Restaurant location for more than 1 Yz years previously, and has furnished service to numerous customers on U. S. Highway 301 in the immediate vicinity of said motel for over five years.
‡
“6. Upon information and belief, the plaintiff alleges that the defendant plans to provide electric power service for said Motel, and for other customers of the plaintiff in the surrounding area, and in furtherance of said plan, the defendant has committed the following overt acts, to-wit:
“(a) Defendant has built a distribution line of approximately 12,600 volts a distance of approximately 4j/£ miles through territory served by the plaintiff to the Valencia Motel & Restaurant location.
“(b) Defendant has installed a pole framed for the installation of transformers to supply electric current to said Valencia Motel & Restaurant location.
“(c) That the defendant has submitted to the president of the Valencia Motel & Restaurant a written proposal for supplying electric current to said business, and upon information and belief, plaintiff says an agreement has been concluded for supplying electric current to said Valencia Motel & Restaurant by the defendant.”
The plaintiff then alleges that unless the defendant is restrained, the plaintiff will be irreparably injured by losing profits from the sale of electric energy to the aforesaid Motel; that this action will create a precedent and will encourage the defendant to encroach upon other areas now served from the plaintiff; and that the plaintiff will suffer other losses which will be difficult to accurately determine by reason of equipment and services which will be wasted or thrown into disuse.
The complaint in case No. 1149 follows the same tenor of the complaint in Case No. 1002 and alleges in addition that the plaintiff Tampa Electric Company is supplying adequate services to Lindsey and Chapman on their premises and location on the west side of Highway 301 from which location Lindsey and Chapman are operating the Clay-Hyder Trucking business; that the real property is owned by Southern Leasing, Inc., a Florida corporation, in which David A. Lindsey is President, Ronald J. Chapman is First Vice-President, Kenneth W. *17 Lindsey is Second Vice-President, and William A. Ross is Secretary, all four of whom constitute said corporation’s directors, and who own 150 shares, 150 shares, 100 shares, and 10 shares respectively, which shares constitute all of the outstanding stock of the corporation; that the plaintiff has been rendering adequate central station service to Lindsey and Chapman at said location for approximately 2% years; that Lindsey and Chapman are expanding their operations and facilities and have constructed a much larger building adjacent to the property now occupied by them and being served by plaintiff, and that the new building will be between 300 and 400 feet from the present building. The complaint then avers that the Withlacoochee River Electric Cooperative, Inc., has offered to supply electric service to this new building and this new service is sought to be enjoined in this suit.
The two complaints above discussed nowhere charge any trespass or any injury to the plaintiff corporation in any respect except that the cooperative defendant seeks to compete with it in the electric supply business. Nowhere in the complaints do we find any facts that would bring these two cases within the orbit of the exceptions set forth by the Supreme Court in St. Joseph Telephone & Telegraph Co. v. Southeastern Telephone Co., supra.
The complaint is directed at an alleged ultra vires act on the part of the Withla-coochee River Electric Cooperative, Inc., in invading the trade territory allegedly controlled by the Tampa Electric Company in violation of Section 425.04, Florida Statutes, F.S.A.
The legal effect of the complaint in this case is identical with the facts set forth by the Supreme Court in its decision in St. Joseph Telephone & Telegraph Co. v. Southeastern Telephone Co., supra, in which that Court held that the private corporation could not bring the suit in question.
It is the opinion of this Judge that each of these two cases should be reversed for the purpose of dissolving the temporary restraining orders heretofore entered and to enter an order dismissing the complaint in each case.