JAMES H. BURNS v. ST. PAUL CITY RAILWAY COMPANY.[1]

June 21, 1907.

Nos. 15,152—(118).

**Advertising in Street Cars.**

> The publisher of a weekly newspaper, containing, among other things, advertisements, sought to enjoin a street railway company from placing advertisements on the upper inside parts of its cars, because, as a result, that company diverted a large and lucrative business, which otherwise he might have been able to secure. It is *held* that this was not sufficient to entitle plaintiff to litigate the question whether the acts of the defendant were ultra vires or not.

Action in the district court for Ramsey county to enjoin defendant from placing advertisements in its cars and for $1,000 damages for loss of profits. From an order of Kelly, J., sustaining a demurrer to the complaint, plaintiff appealed. Affirmed.

*W. E. Dampier,* for appellant.

*Munn & Thygeson,* for respondent.

JAGGARD, J.

The plaintiff and appellant, the publisher of a weekly newspaper, containing, among other things, advertisements, sought to enjoin the defendant and respondent street railway company from placing advertisements on the upper inside parts of its cars, because, as a result, the defendant unlawfully diverted from the plaintiff a large and lucrative business in advertising, and infringed upon the rights and business of the plaintiff. From an order sustaining a demurrer to the complaint, this appeal was taken.

The initial question concerns plaintiff's right to litigate the question whether the defendant railway company exceeded its corporate powers in so receiving and placing advertisements, because he, as an individual, has thereby suffered special damage. With a vivacity that is refreshing and a plausibility that is rather surprising, counsel for plaintiff has marshaled authorities to the effect that "this application is not a path-

[1] Reported in 112 N. W. 412.

breaker. The path is not only broken, but is well paved—macadamized with precedents." The authorities to which he calls our attention in this connection fall into two groups.

In the first are cases in which courts of equity have interfered, not only upon the information of the attorney general, but also upon the information of private parties directly affected, to enjoin public nuisances or trespasses. Story, Eq. Jur. § 924, note a; Mississippi & M. R. Co. v. Ward, 2 Black, 485, 17 L. Ed. 311; Sparhawk v. Union, 54 Pa. St. 401; Ewell v. Greenwood, 26 Iowa, 377; Zabriskie v. Jersey City, 13 N. J. Eq. 314; Green v. Oakes, 17 Ill. 249; Pettibone v. Hamilton, 40 Wis. 402; People v. Third Avenue, 45 Barb. 63. These authorities are not in point. By no reasonable construction can the acts of the defendant be regarded either as a nuisance or a trespass.

In the second group are cases in which a court of equity has restrained corporate officers from exceeding their corporate powers. Wilts v. Swindon, 9 Ch. App. 451, concerned essentially the right of one riparian proprietor to prevent any other riparian proprietor above him from diverting a stream so as to cause that stream to flow otherwise than in its accustomed channel. See Sir W. M. James, L. J., at page 457. Neither on facts nor on principle does this case support plaintiff's contention. What he regards as the "leading and determining case on the subject" (Attorney General v. Great Northern, 1 Drewry & S. Ch. 154) involved the information of the attorney general upon the relation of a stranger to the company against the Great Northern Railway Company. It was held that the attorney general could sustain information on behalf of the public to restrain the railroad company from carrying on the business of coal merchants. That the state, proceeding through the attorney general, may restrain a company from such ultra vires adventures, is incontrovertible. That a stranger, acting without the attorney general, as was undertaken to be done here, is in no such position, is equally incontrovertible. In Colman v. Eastern, 10 Beav. 1, plaintiff, on behalf of himself and other stockholders in a railway company, restrained "the directors committing a breach of trust," viz., by guarantying certain profits, and securing the capital of an intended steamer packet company, who were to act in connection with the railway company. So in Sandford v. Railroad Co., 24 Pa. St. 378, 64 Am. Dec. 667, it was alleged that the complainant was a stock-

holder of the railroad company. It was held that an injunction would issue on the petition to restrain the railroad company from carrying on business in pursuance of an illegal contract granting to one express company the exclusive right of transportation. In the case at bar, the plaintiff was in no wise connected with the defendant company as a stockholder or otherwise.

·Apart, however, from specific decisions, we are at a loss to see why the plaintiff has any occasion to seek equitable relief. His damages, if they exist at all, are entirely conjectural and extremely remote. The advertising business was incidental to the running of cars. Incidental thereto was the expenditure of considerable sums of money. That, incidentally, might result in a decrease in newspaper advertising. That, incidentally, might take from plaintiff's paper advertisements which might otherwise have come to it. Even if the street car company exceeded its powers, which, as at present advised, we think it did not, plaintiff's damage is too remote to give him any standing in a court of equity.

Counsel's quotation from Troilus and Cressida, act II, scene 2, is apt:

> There is a law in every well ordered nation
> To curb these raging appetites that are
> Most disobedient and refractory.

We conclude, however, that plaintiff has not shown himself entitled to raise the question in this case whether defendant's "appetite" was "disobedient and refractory."

Affirmed.