SCOTT-STAFFORD OPERA HOUSE COMPANY and Others v. MINNEAPOLIS MUSICIANS ASSOCIATION and Others.[1]

July 5, 1912.

Nos. 17,636—(162).

**Action to restrain enforcement of rule.**

That a rule of an incorporated musicians' association is ultra vires would

[1] Reported in 136 N. W. 1092.

not, of itself, give any cause of action to the proprietors of theaters and opera houses injured by the enforcement thereof.

**Rule not ultra vires.**

Rule of the defendant corporation that none of its members, all of whom were musicians, should accept employment in theaters or opera houses, except upon certain conditions, *held* not ultra vires.

**Demurrer sustained.**

Demurrer *held* properly sustained to complaint in an action by theater and opera house proprietors to enjoin the enforcement of such a rule.

Action in the district court for Hennepin county to restrain defendants from interfering with the business of plaintiffs, or of either of them, and from enforcing the rule mentioned in the opinion. Defendants' demurrer to the complaint was sustained, and the action dismissed, Waite, J. From the order sustaining the demurrer, plaintiffs appealed. Affirmed.

*Frank W. Booth,* for appellants.

*Benjamin Davenport* and *D. Davenport,* for respondents.

PHILIP E. BROWN, J.

The plaintiffs are in the theatrical business in the city of Minneapolis. The defendants are, respectively, a corporation having only musicians as members and the officers thereof. The object of the action is to restrain the defendants from enforcing a certain rule adopted by the defendant corporation relative to acceptance by its members of employment by the plaintiffs. This is an appeal from an order sustaining a general demurrer to the complaint.

The complaint, after alleging the character, business, and residence of the several plaintiffs, proceeds, in substance, as follows: The purpose of the defendant corporation, as indicated by its articles of incorporation, is "to unite the instrumental portions of the musical profession for the better protection of its interests in general and the establishment of a minimum rate of prices to be charged by members of said association for their professional services and the enforcement of good faith and fair dealings among its members; to promote the cultivation of the art, and to create a fund for the erection of a suitable building for musical and other purposes of the associa-

tion." Practically all the musicians available or qualified for the employment by any of the plaintiffs are members of the defendant corporation, and subject to its rules as interpreted by the officers thereof. Each of the plaintiffs, for a number of years past, has been engaged in the business of giving public entertainments and charging admission thereto; and properly to give the same it has been necessary for each of the plaintiffs to invest large sums of money in permanent equipment, such investment having in fact been made by each of the plaintiffs, and being useless for any purpose other than public entertainments. A necessary part of such entertainments is instrumental music, which has been furnished by the members of the defendant corporation; it being impossible for the plaintiffs to obtain satisfactory music for their entertainments except from such members.

Such being the alleged state of affairs, and the relations between the plaintiffs and the members of the defendant corporation, the complaint further alleges that on June 1, 1911, the defendant corporation "adopted, and threatens to, and will, unless restrained by this court, enforce 'a rule which prohibits any and all members of defendant corporation from accepting employment or playing in the orchestra of any of the plaintiffs, unless at least a certain number of persons, all members of defendant corporation, are included in such orchestra;" that the number of persons required to make up the orchestra for the different entertainments given by each of the plaintiffs varies with the nature of the entertainment to be given; that in many of the entertainments that are given by each plaintiff an orchestra made up of a less number of persons than is required by the said rule would be entirely satisfactory and sufficient, and that a compliance with the said rule in such entertainments would be and is a useless and needless burden and expense upon such plaintiff; that the officers and members of the board of directors of the defendant corporation propose and plan to, and will, unless restrained, avail themselves of the said rule for the purpose of interfering with each of the above-named plaintiffs and with their business, and will prohibit and prevent each plaintiff from securing musicians who are qualified to perform the parts that are necessary to the proper con-

duct of such orchestra, and will prevent each and all of plaintiffs from furnishing competent orchestras at their said entertainments, and from properly and successfully conducting their said business; that if the defendant corporation, or its said officers, should attempt to enforce the said rule, all of its members, under the rules and by-laws thereof, would be compelled to, and would in fact, comply with its direction, and would refuse to, and would not in fact, accept employment in the orchestras of any of the plaintiffs, if such plaintiffs, or any of them, did not employ the number of musicians required under the said minimum rule; that there is no disagreement or cause of complaint between any of the plaintiffs and any of the said musicians, and that the only cause of complaint is between the plaintiffs on the one side and the defendant corporation and its officers on the other side, on account of the said rule and its enforcement; and that' the plaintiffs are without adequate or any remedy at law.   The prayer is for a judgment forever restraining the defendants, and each of them, from in any way interfering with the business of the plaintiffs, or any of them, and from enforcing or attempting to enforce said rule, and for general relief.

1. The plaintiffs' first contention is that the rule complained of is ultra vires, and that the "corporation has no right to enforce this ultra vires rule to the damage of these plaintiffs, and the officers of the corporation have no right to use the corporation for this purpose as against these plaintiffs." In other words, the plaintiffs seek to borrow an element of actionability from the doctrine of ultra vires. This they cannot do. The plaintiffs being entire strangers to the defendants, the acts complained of must be considered without reference to whether or not they are ultra vires. Burns v. St. Paul City Ry. Co. 101 Minn. 363, 112 N. W. 412, 12 L.R.A.(N.S.) 757; Railroad Co. v. Ellerman, 105 U. S. 166, 26 L. ed. 1015. Each of these cases involved the right to enjoin a corporation from competing, by ultra vires acts, with the plaintiff in a certain line of business. Said the court in the latter case at page 173, [26 L. ed. 1017]: "But if the competition in itself, however injurious, is not a wrong of which he could complain against a natural person, * * * how does it become so merely because the author of it is a corporation

acting ultra vires? * * * The legal interest which qualifies a complainant other than the state itself to sue in such a case is a pecuniary interest in preventing the defendant from doing an act, where the injury alleged flows from its quality and character as a breach of some legal or equitable duty."

. The plaintiffs in the instant case are in no position to challenge the rules of the defendant corporation as being ultra vires; and, even if they had any standing to make such an attack, we are satisfied that the rule under consideration is not ultra vires.

2. Unless, therefore, the acts complained of constitute a breach of some legal or equitable duty, without regard to whether or not they were ultra vires, the sustaining of the demurrer was proper. This brings us to the plaintiffs' second and only remaining contention, viz., that "the rule complained of, if not subject to the objection that it is ultra vires under the articles of incorporation, is not legally enforceable against these plaintiffs in any event." In connection with this contention the plaintiffs practically admit that it is contrary to Bohn Mnfg. Co. v. Hollis, 54 Minn. 223, 55 N. W. 1119, 21 L.R.A. 337, 40 Am. St. 319, and seek to show that the rule established by that case has been repudiated, or at least so modified as not to be determinative of the instant case; Ertz v. Produce Exchange of Minneapolis, 79 Minn. 140, 81 N. W. 737, 48 L.R.A.90, 79 Am. St. 433, and Tuttle v. Buck, 107 Minn. 145, 119 N. W. 946, 22 L.R.A. (N.S.) 599, 131 Am. St. 446, 16 An. Cas. 807, being cited in this connection. We think, however, that the instant case is controlled by the Bohn case, supra. Says the syllabus of that case:

"Any man, unless under contract obligation, or unless his employment charges him with some public duty, has a right to refuse to work for or deal with any class of men, as he sees fit."

This proposition is not attacked in the instant case, nor is it assailable. Hence it follows that any one of the members of the defendant corporation would have had the right to refuse to work for any one of the plaintiffs, except upon such terms and conditions as such member might have seen fit to impose.

"And this right," continues the syllabus in the Bohn case, "which

one man may exercise singly, any number may agree to exercise jointly."

Again, at page 234, this same case, Mitchell, J., says: "What one man may lawfully do singly, two or more may lawfully agree to do jointly. The number who unite to do the act cannot change its character from lawful to unlawful."

Unquestionably this is the law in this state, and it has never been repudiated or modified by this court. See State v. Daniels, supra, page 155, 136 N. W. 584. The cases of Tuttle v. Buck, supra, and Ertz v. Produce Exchange of Minneapolis, supra, merely stand for a converse rule, which, as stated by Chief Justice Start in the Ertz case, page 145, is that "one man singly, or any number of men jointly, having no legitimate interests to protect, may not lawfully ruin the business of another by maliciously inducing his patrons and third parties not to deal with him. * * * This is just what the complaint in this case charges the defendants with doing, and we hold that it states a cause of action." This is equally the settled law; but we do not agree with the plaintiffs in their contention that it applies to the instant case. Paraphrasing the concluding sentence of the Ertz case, "This is just what the complaint in this case did *not* charge." There is no allegation of any contractual relation between the plaintiffs, or any of them, and any of the defendants, or any of the members of the defendant corporation. There is no allegation of conspiracy, malice, or ulterior motive. No question of strike, violence, wage, boycott, or violation of contractual relations or public duty, is involved; and no allegation is made that the rule complained of is not beneficial to the members of the defendant corporation.

The plaintiffs' argument is largely based upon the assumption of lack of benefit to such members; but, in the absence of any allegation of such lack of benefit, we think it may fairly be inferred from the facts and circumstances alleged, and from the very nature of the rule recited, that the rule was designed to benefit the members of the defendant corporation. Certainly the rule does not appear to be so manifestly nonadapted to produce benefit as to raise an inference of malice or evil motive. As said in the Ertz case, supra, in distin-

guishing the Bohn case, supra: "It is to be noted that the defendants in the Bohn case had similar legitimate interests to protect * * * and that the defendants' efforts to induce parties not to deal * * * were limited to members of the association having similar interests to conserve, and that there was no agreement or combination or attempt to induce other persons not members of the association to withhold their patronage," etc. The rule established by the Bohn case was reiterated, though not applied, in the Ertz case, and there is nothing in the Tuttle case, supra, to the contrary.

We think it applies to the instant case, and the order sustaining the demurrer to the complaint is therefore affirmed.