HAVERHILL STRAND THEATRE, INCORPORATED, *vs.* A. L. GILLEN & others.

Suffolk.    January 18, 1917. — February 28, 1918.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE & CARROLL, JJ.

*Unlawful Interference.   Labor Union.   Equity Jurisdiction,* To enjoin unlawful interference.

In a suit in equity against the members of an unincorporated labor union to enjoin the defendants from interfering with the plaintiff carrying on his business in his own way, if the plaintiff shows that the combination of the defendants was for an illegal purpose declared in a rule, he is entitled to relief on showing

that the defendants intend to enforce their declared purpose, and it is not necessary for him to go further and prove that the defendants threaten to enforce the purpose expressed in their rule by means which are illegal.

The proprietor of a moving picture theatre, who wishes to employ a single musician to play the organ at all performances given there, can maintain a suit in equity against the members of a labor union of musicians to enjoin the defendants from enforcing against him a minimum rule adopted by the union, by which the plaintiff in order to employ any member of the union is required to employ an orchestra of not less than five musicians.

A combination of the musicians in a city, by which a proprietor of a place of entertainment in the city in order to employ any member of the combination is compelled to employ a specified number of other members, is illegal as an unjustifiable interference with the right to such free flow of labor as every member of a community is entitled to for the purpose of carrying on the business which he has chosen to undertake.

*Pickett* v. *Walsh,* 192 Mass. 572, distinguished.

*Scott-Stafford Opera House Co.* v. *Minneapolis Musicians Association,* 118 Minn. 410, disapproved.

BILL IN EQUITY, filed in the Superior Court on September 9, 1916, by a corporation engaged in the operation of a moving picture theatre in Haverhill against certain officers and members of a voluntary unincorporated association, called Local 302, American Federation of Musicians, and all other members of that local association too numerous to be named individually, to enjoin the defendants from enforcing a rule adopted by such local association, by which all members of the association were forbidden to perform in the plaintiff's theatre unless the plaintiff should employ not less than five musicians for the purpose of furnishing musical accompaniments at its entertainments.

The case was referred to a master, who filed a report. The material facts found by him are stated and described in the opinion. The special findings which are referred to in the opinion as being set forth in full in the statement of the case were as follows:

"2. This rule is enforced against the members of the union by either fine or expulsion."

"4. There has been neither a boycott nor strike put in force or threatened to be put in force by the defendants or any of them against the plaintiff.

"5. The defendants or any of them have in no wise disturbed or interfered with any existing contractual relation to which the plaintiff is a party.

"6. The defendants or any of them have in no wise threatened the plaintiff or its business."

"8. Coburn, the organist, refrained from working in the plaintiff's employ after September 10, 1916, because of the existence of said rule and the penalties incident to its violation."

The case came on to be heard by *Lawton*, J., who by agreement of the parties made an interlocutory decree confirming the master's report and at the request of the parties reserved and reported the case upon the pleadings and the master's report for determination by this court, such final decree to be entered as might be just and proper.

The case was argued at the bar in January, 1917, before *Rugg*, C. J., *Loring, Braley, De Courcy, & Crosby*, JJ., and afterwards was submitted on briefs to all the justices.

*J. J. Kaplan*, for the plaintiff.

*H. J. Cole*, for the defendants.

LORING, J.    The plaintiff corporation is a "moving picture and vaudeville house" in Haverhill. The defendants are officers and members of a labor union of musicians. They also are joined as representing the other members of it who are too numerous to be made parties defendant. For convenience we shall speak of the union as the party defendant. In the summer of 1916 the plaintiff had in its employ an organist, one Coburn by name, who was a member of the defendant union. He played an organ (part of the plaintiff's building) at all performances given by it, and the music of the organ was the only music furnished at these performances. Before 1916 the defendant had adopted a minimum rule fixing the number of musicians who should be employed in the different theatres in Haverhill. By this rule the plaintiff was required to employ an orchestra of five musicians if it wished to employ any member of the defendant union. The minimum rule had been suspended during the summer of 1916. At some time shortly before the filing of this bill the defendant notified the plaintiff that it was about to enforce the minimum rule so far as the plaintiff was concerned. "From motives of economy" the plaintiff wished to continue to employ Coburn and Coburn alone. Upon being informed of the defendant's intention to enforce the rule, the plaintiff brought this bill on September 9, alleging that the rule was illegal and asking that the defendant be enjoined

from putting it in force. After playing at the performance on September 10, Coburn left the plaintiff's employ "because of the existence of said rule and penalties incident to its violation" to quote the terms of one of the findings made by the master. It would seem that Coburn's wages were $27 a week with one night off. Some time after Coburn left, the plaintiff succeeded in hiring a non-union organist, and it had to pay him $60 a week. The master's report ends in these words: "Upon the pleadings and the foregoing findings, general and special, the parties agree, without waiving their right to raise other questions, that the following question of law may be posited for the court. In the absence of boycott, strike, intimidation or interference with existing contractual relations, does an unincorporated labor organization have a legal right to enact with penalty of fine or expulsion a rule which prevents its members for [from] working for any employer, unless said employer employs a given number of union men; and where, as a matter of fact, the operation of said rule narrows the labor market and restricts the field of competitive employment for the employer?"

The first contention of the defendant is that on the findings of the master the "plaintiff had acquiesced in the enforcement of the rule" here complained of and that a decree dismissing the bill on that ground "would be well warranted on this evidence." After making this suggestion the counsel for the defendant seems to have waived it. But, if the suggestion is not to be taken to have been waived, it is enough to say that on the findings of the master what was said by the plaintiff to the defendant was not sufficiently definite to amount to an agreement not to maintain this bill if it was entitled to do so.

The defendant's next contention is based upon the master's finding that "neither a boycott nor strike [had been] put in force or threatened to be put in force" by the defendant before the bill now before us was brought; that the defendant had "in no wise disturbed or interfered with any existing contractual relation to which the plaintiff is a party" and that the defendant "in no wise threatened the plaintiff or its business" before the bringing of the bill. The three special findings here relied on together with the finding already referred to and one other finding are set forth in full in the statement of the case.

The defendant's contention based upon these findings is that in the absence of a strike or of threats on the part of the defendant the present bill cannot be maintained. It is this contention without doubt which is referred to in the opening words of the question of law which the master says that the parties agreed should be "posited for the court." This contention is without foundation. On the findings made by him it must be taken that the master has found that the defendant did notify the plaintiff that it would enforce its minimum rule but that the defendant made no threats to the plaintiff other than the notice that the rule would be enforced.

The bill was brought, (first) on the ground that the rule was an illegal one and (second) on the ground that the defendants had notified the plaintiff that they would enforce it. For the purpose of the question under discussion, it must be assumed that the rule was an illegal one. If a union notifies a plaintiff that they will enforce an illegal rule which operates to his prejudice he has a right to bring a bill to have the union enjoined from enforcing it. In the case at bar the master finds that the defendant union did notify the plaintiff that it would enforce the minimum rule and the plaintiff proved the fact that the defendant did intend to enforce it when it proved that Coburn left "because of the existence of said rule and penalties incident to its violation." The contention that a plaintiff cannot bring a bill upon being notified that a combination of individuals will enforce an illegal rule which operates to his prejudice in the absence of a strike or threats of a strike or intimidation is founded on a misconception. Where a combination is a legal one a plaintiff has a right to complain if the parties to the combination undertake to enforce it by illegal means. A boycott and threats of intimidation by using physical violence are illegal means of enforcing a legal combination. But a strike is one of the legal means to which parties have a right to resort to enforce a legal combination. On the other hand when a combination is an illegal one the plaintiff has a right to have it enjoined in case it operates to his prejudice on proving the fact that the defendants intend to enforce it. He has no need to go further and prove that the defendants have threatened to enforce it by means which are illegal.

With this explanation the question propounded to the court by

the agreement of parties is this:  Is a combination between musicians a legal one by which a plaintiff is compelled to employ a number of musicians specified by the members of the combination if he wishes to employ any member of the combination, even though it be the fact that in the plaintiff's opinion the employment of a single musician is the most advantageous way of conducting his (the plaintiff's) business and that the employment of more than one musician will cause him pecuniary loss.  It is manifest that such a rule is an interference with a plaintiff's right to that free flow of labor to which every member of the community is entitled for the purpose of carrying on the business in which he or it has chosen to embark.  The right to the free flow of labor is not an absolute right; it is limited by the right of employees to combine for purposes which in the eye of the law justify interference with the plaintiff's right to a free flow of labor.  A combination which interferes with a plaintiff's right to a free flow of labor is legal if the purpose for which it is made justifies the interference with that right.  On the other hand it is illegal if that purpose does not justify the interference (which ensues from the making and enforcing of the combination in question) with the plaintiff's right to a free flow of labor.  So much is settled in this Commonwealth.  See, for example, *Plant* v. *Woods,* 176 Mass. 492; *Reynolds* v. *Davis,* 198 Mass. 294; *DeMinico* v. *Craig,* 207 Mass. 593, 598; *Minasian* v. *Osborne,* 210 Mass. 250; *Burnham* v. *Dowd,* 217 Mass. 351; *Cornellier* v. *Haverhill Shoe Manufacturers' Association,* 221 Mass. 554.  It is also settled in this Commonwealth that the question, whether the purpose for which the combination is made does or does not justify interference with the plaintiff's right to a free flow of labor, is a question of law for the court.  *DeMinico* v. *Craig, ubi supra.  Minasian* v. *Osborne, ubi supra.  Cornellier* v. *Haverhill Shoe Manufacturers' Association, ubi supra.*

There is no decided case in this Commonwealth which has gone so far as we are asked to go in the case at bar and with the exception of the case of *Scott-Stafford Opera House Co.* v. *Minneapolis Musicians Association,* 118 Minn. 410 (which is not law in this jurisdiction as we shall point out later on), there is no decided case outside of this Commonwealth which has gone so far.

No case has gone further toward supporting the defendant's

contention than *Pickett* v. *Walsh*, 192 Mass. 572.  But that case does not go as far as we are asked to go here.

The question we have to decide in the case at bar is whether the doctrine of *Pickett* v. *Walsh* is to be extended.  In *Pickett* v. *Walsh* a union of masons struck, that is to say, combined to refuse to lay bricks to get the work of pointing the mortar after the bricks had been laid.  The contractor wished to give the work of pointing to men known as pointers who had that and that alone as their trade.  In that case the complaint was made by the pointers.  But that is not material.  It was held that the purpose for which the combination was made, namely to get work for members of the union, was a justification for the interference with the pointers' right to be employed to do the work and as a consequence that the combination was a legal one.  But in that case the contractor wanted the pointing done.  The peculiarity of the case at bar is that the work which the defendants have combined to force the plaintiff to give to them is work which the plaintiff does not want done; not only that but it is work which if done at the plaintiff's expense will cause him pecuniary loss.  The difference between *Pickett* v. *Walsh* and the case at bar is that in *Pickett* v. *Walsh* the defendants combined for the purpose of getting work which the employer wanted done while in the case at bar the purpose of the defendants' combination is to force the plaintiff to make work for them when he does not wish to have that work done and when that work will result in a pecuniary loss to him.  The question is whether a combination by a union for the purpose of getting work for the members of it in this indirect way is a justifiable interference with the plaintiff's right to a free flow of labor.

The consequences of holding a combination for such a purpose to be a legal one are far reaching.  If it is legal for a union of musicians to combine for the purpose of forcing a plaintiff (who wants an organist only) to employ an orchestra of several pieces, that is to say, if that indirect purpose of enabling the union musicians to earn more money justifies the adoption of the minimum rule, it is hard to see why it is not legal for a union of carpenters (for example) to refuse to work on a building belonging to the plaintiff unless he uses in the construction of it hand-made doors, window frames and window sashes, in place of doors, window frames and window sashes made by machine.  Heretofore it

seems to have been assumed that a rule forbidding union members to work on machine-made material in order to get the work of doing it by hand was not a legal combination. See in this connection *Oxley Stave Co.* v. *Coopers' International-Union of North America,* 72 Fed. Rep. 695; *Hopkins* v. *Oxley Stave Co.* 83 Fed. Rep. 912; *Minasian* v. *Osborne,* 210 Mass. 250, 253. There is more money for masons, carpenters and plumbers in building a ten-story store than there is in building a store of two stories. If it is legal for musicians to adopt a minimum rule fixing the number of musicians who shall be employed in all the theatres within its jurisdiction, it is hard to see why a minimum rule may not be adopted by the allied trade unions of masons, carpenters and plumbers fixing the number of stories of which every store to be erected in the business district is to consist. That is to say, masons, carpenters and plumbers may combine to refuse to work on any store less than ten stories in height even though the owner of the land wishes to erect a store of two stories only and even though the owner in his judgment cannot without pecuniary loss erect one having more than two stories. It is no answer to point out that the right of an owner of land to erect a two-story building upon it is an absolute one and what we are concerned with in the case at bar is the plaintiff's limited right to a free flow of labor. But, in the case of a minimum rule adopted by a union or combination of unions fixing the number of stories for every store erected in the business district, the absolute right of the owner to erect a store having fewer stories is not interfered with. The minimum rule does not forbid the owner erecting such a store with his own hands or by employing non-union labor. What such a minimum rule interferes with is not the owner's right to erect the store with fewer stories but the owner's right to a free flow of labor to erect a store with fewer stories. If such a minimum rule can be legally adopted by a union or a combination of unions it is hard to see why unions or a combination of unions cannot adopt a minimum rule fixing the number of stories in case of any and every building to be erected upon any and every foot of land within the Commonwealth. Other illustrations might be put showing the far reaching consequences of a decision upholding the legality of this minimum rule.

A majority of the court are of opinion that a minimum rule

fixing the number of musicians to be employed in the several theatres specified in it is an interference with the right of the owners of those theatres to a free flow of labor which is not justified by the purpose for which it is made.

The defendants have relied upon *Scott-Stafford Opera House Co. v. Minneapolis Musicians Association,* 118 Minn. 410, where the court reached a conclusion contrary to that reached by us. But that case was decided upon the ground that what one man may do singly any number of men may agree to do jointly. That is not the law of this Commonwealth. *Burnham* v. *Dowd,* 217 Mass. 351. *Pickett* v. *Walsh,* 192 Mass. 572, and cases there collected.

From what has been said it follows that the combination complained of by the plaintiff is an illegal combination and that injunction should issue as prayed for.

*So ordered.*