(No. 33078.—

THE PEOPLE *ex rel.* J. H. Anderson Monument Company, Appellant, *vs.* ROSEHILL CEMETERY COMPANY, Appellee.

*Opinion filed May 24, 1954—Refiled after rehearing Sept. 23, 1954.*

ALBERT J. MESEROW, of Chicago, for appellant.

ASHCRAFT & ASHCRAFT, of Chicago, (RUFUS D. BEACH, of counsel,) for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is a *quo warranto* action filed in the superior court of Cook County by the People, on the relation of J. H. Anderson Monument Company, a corporation, hereinafter referred to as plaintiff, against Rosehill Cemetery Association, a corporation, hereinafter referred to as defendant. The plaintiff appeals from the judgment of the superior court dismissing the complaint and entering judgment for defendant on the pleadings. The appeal is properly directed to this court since a franchise is involved.

After refusal of the Attorney General of Illinois and the State's Attorney of Cook County to file a complaint in the nature of *quo warranto,* plaintiff filed its petition in the superior court for leave to file such complaint, pursuant to the statute. (Ill. Rev. Stat. 1953, chap. 112, par. 10.) Leave was granted plaintiff to file over defendant's objection.

The complaint alleged that since 1949 defendant had engaged in the business of selling monuments, markers, tombstones and memorials for profit, and that it was thereby exceeding and violating its charter powers and called upon it to show by what warrant it exercised such powers. After denial of its motion to dismiss the complaint, defendant filed its answer admitting the sale of monuments, memorials and markers for use and installation within the cemetery operated by it, denying that it sells any memorials for use and installation elsewhere, and set up its charter.

Plaintiff's reply denied generally the affirmative allegations of the answer and, while it did not question the statement that sales were for use or installation only within defendant's cemetery, it did challenge defendant's contention that Rosehill had the right to make such sales as a service incident to the carrying out of its objects and purposes as contemplated by the charter.

The court then granted defendant's motion for judgment on the pleadings on the ground that the reply was substantially insufficient in law, denied permission to file an amended reply, and ordered the complaint dismissed at the cost of plaintiff. The judgment of the court was in effect an adjudication that defendant was within its charter authority in selling memorials for erection and use in its cemetery.

Before passing upon the primary question, it is necessary to examine the contention made by defendant that plaintiff has no such interest in defendant's charter powers which would entitle it to maintain this action in the name

of the People and consequently has no right to appeal. This question was raised before the trial court in the answer to the petition for leave to file the complaint and in a motion to dismiss the complaint. Defendant assigns as cross errors the court's order authorizing the filing of the complaint and its refusal to dismiss the complaint. In addition to the assignment of cross errors, defendant has here filed a motion to dismiss this appeal, with suggestions, upon the theory that plaintiff had no right to maintain a *quo warranto* proceeding in the first instance and consequently has no right of appeal from an adverse decision. This motion was denied by this court March 9, 1954.

Section 2 of the Quo Warranto Act (Ill. Rev. Stat. 1941, chap. 112, par. 10,) provides that *quo warranto* proceedings shall be brought in the name of the People by the Attorney General or State's Attorney of the proper county or by any citizen having an interest in the question on his own relation after request to and refusal or failure by such officials so to do, upon giving proper notice and getting leave of court. All necessary jurisdictional steps were here taken and the sole question presented on this point is whether plaintiff has such an interest in the question as to permit it to maintain this action.

We have had numerous occasions to construe the Quo Warranto Act of 1937 with respect to the right of private citizens to maintain actions thereunder. Our holdings have consistently been that the interest of an individual must be one that is personal to him and not common to the public. It must be of such a nature that the usurpation of a public grant, franchise or office has trespassed upon or injured his private, legal or equitable rights as differentiated from the injury to the general public. *Rowan* v. *City of Shawneetown,* 378 Ill. 289; *People ex rel. Buchanan* v. *Mulberry Grove Community High School Dist.* 390 Ill. 341; *Adair* v. *Williams,* 407 Ill. 309; *People* v. *Wood,* 411 Ill. 514.

It is alleged by plaintiff's pleadings that it is engaged in the business of selling tombstones, monuments and markers for graves and memorials, that its principal place of business is located across the street from the main entrance to the Rosehill Cemetery, that a major portion of its business is derived from lot owners and relatives of deceased persons buried in that cemetery, that since the year 1949 when defendant began to sell in competition that plaintiff's business has declined approximately 50 percent and that if defendant continues to engage in such business plaintiff will be compelled to discontinue its business with a consequent loss of its large investment built up during the years.

From the facts alleged, which for the present purpose must be taken as true, it appears that plaintiff does have a sufficient individual interest in the question to maintain a *quo warranto* action on its own relation. Its location across from defendant's cemetery, peculiar to it so far as the record shows, and the fact that a majority of its business is derived from owners of lots in such cemetery make its interest different not only from that of the general public but its individual interest differs even from others engaged in a like business. We find no error in the trial court's rulings on this point and the motion to dismiss the appeal was properly denied.

The substantive question is whether the sales of markers and memorials for use in its cemetery were *ultra vires* acts and not authorized by its charter.

Rosehill Cemetery Company was incorporated in 1859 by a special act of the General Assembly. The charter granted it the right to operate and maintain a cemetery. It was therein authorized to purchase land, to lay out, arrange and dispose of burial lots on such terms and in such conditions for permanent care and preservation as they may agree upon with the purchasers, to erect such buildings, tombs, enclosures or other structures as the

board of managers deemed advisable, to ornament the grounds for cemetery purposes and to receive trust funds and apply them for the improvement of the cemetery or for the erection, repair, preservation or renewal of any tomb, monument, gravestone or other erection. The charter has twice been amended; first, to authorize the setting up of a trust fund, and, second, granting it the powers of eminent domain.

Defendant insists that it has express powers granted by its charter to offer for sale, and to sell as a service to its lot owners, markers and monuments for installation on lots in its cemetery and that the comprehensive powers to use land for "cemetery purposes" is indicated by the specific powers granted. It is argued that the words "to arrange and dispose of" burial lots is only a part of the larger purpose for which the cemetery was established, and that such words are ample authority to sell and erect monuments. It is further argued that the authority "to erect such buildings, tombs, enclosures or other structures as they may deem advisable" covers any structure appropriate to a cemetery. These are tenuous arguments at best. The meaning of the right "to arrange" in its usual context would be the laying out and planning of the cemetery. The most reasonable construction of the authority to erect buildings, tombs, enclosures and other structures is that the proprietor has the right to erect the same for itself and the general use of its cemetery, rather than for the individual lot owners for profit.

It is also contended that the authority to own and operate a cemetery carries with it the implied power to offer for sale and sell monuments. Reference is made to the Illinois Business Corporation Act and many cases are cited to the effect that a corporation may do all things convenient, suitable or necessary to enable it to perform the business designated in the charter. Examples are: a hotel may operate buses, a restaurant, barber shop and

other retail shops. (*Richelieu Hotel Co.* v. *International Military Encampment Co.* 140 Ill. 248.) An interior decorating business may sell flowers 'for use by its customers. (*Quinlan* v. *Almini Co.* 191 Ill. App. 568.) These cases and many others are eminently correct, but they deal with implied powers of corporations which are not in the preferred class of the defendant. Rosehill is a *quasi*-public corporation with the right of eminent domain. (*Rosehill Cemetery Co.* v. *Hopkinson,* 114 Ill. 209.) It has certain other privileges not enjoyed by business corporations, including exemption from taxes. (*People* v. *Rosehill Cemetery Co.* 37.1 Ill. 510.) As a consequence, its powers should be strictly construed lest it be put in such a preferred position as to constitute a menace to free enterprise.

While we have never specifically passed upon the point here involved, we have had occasion in the past to comment upon the charter powers of the defendant. In *City of Chicago* v. *Rose Hill Cemetery Co.* 285 Ill. 567, at page 569, we said: "This was an incorrect basis for estimating benefits, as the property was not acquired and held by appellant for any other than cemetery purposes and the law prohibited the use of it by appellant for any other purpose." Again, in *People* v. *Rosehill Cemetery Co.* 371 Ill. 510, at page 517 we stated: "Defendant was chartered and holds its franchise for the single purpose of conducting a cemetery for burial purposes. Whether it has made a profit and accumulated funds is wholly beside the mark."

A similar situation was presented to us in the case of *People ex rel. Paxton* v. *Bloomington Cemetery Assn.* 353 Ill. 534. A· *quo warranto* action was filed against the Bloomington Cematary Association by the Attorney General on the relation of an individual lot owner charging that the defendant was unlawfully selling and dealing in grave boxes and vaults for profit. The defendant was there charged with unlawfully exercising the powers of buying, selling and dealing in grave boxes and vaults for

profit, that it had unlawfully adopted a rule forbidding the use of grave boxes or vaults except those purchased from it, that relator was prevented from interring a body on his lot in a grave box or vault not acquired from defendant, that individual dealers in boxes and vaults are taxpayers and that the enforcement of said rule restricts competition and tended to give defendant a monopoly. The plea of the defendant was that the furnishing of such items in its own cemetery was necessary to its protection and preservation and was a necessary incident to its business under its charter. The trial court entered an order ousting the corporation from the exercise of the powers complained of. The primary error assigned was that the court erred in finding that defendant had usurped powers not granted by its charter or necessarily incident thereto. The Bloomington charter was granted by the General Assembly just two years prior to that of Rosehill and there is little difference in their charter powers. The only dissimilarity between the *Bloomington case* and the one now under consideration is the claim of exclusive sales rights.

In the *Bloomington case* we said, at page 539: "The exclusive and sole object of the defendant association, as expressed in its charter, is to lay out, enclose and ornament a plat or piece of ground to be used as a burial place. Manifestly, the right to exercise the powers complained of is not expressly included in the grant. If defendant has a right to exercise them it is because they are necessarily incidental to or implied by the powers granted. (*People* v. *Illinois Central Railroad Co.*, 233 Ill. 378; *People* v. *Pullman Palace Car Co.* 175 id. 125.) The right to furnish a place for burial includes the right to prescribe reasonable rules and regulations relative to burial, but the incidental right cannot be said to include any right not granted or reasonably contemplated by charter or contract." In affirming the decision of the trial court in that case, we also said at page 539; "The right of exclusive sale of

grave-boxes is not a necessary incident to the powers expressly granted by the association's charter, nor does it appear how the furnishing of a vault or box by the defendant is either necessary or advantageous to the cemetery except as a means of revenue."

We are of the opinion that the holding in the *Bloomington case* is decisive of the issues here presented. The use of the word "exclusive" in our final finding of usurpation was only descriptive of the factual situation there existing and not as a word of limitation.

The well-written briefs have been carefully considered and we find no Illinois case cited which changes or modifies the ruling in the *Bloomington case*. *Decatur Monument Co.* v. *New Graceland Cemetery Assn.* 342 Ill. App. 692, is not in point, since it does not involve powers of a special charter cemetery corporation. While the cases cited from foreign jurisdictions are persuasive, we find nothing therein to justify a deviation from the holding in *People* v. *Bloomington Cemetery Assn.* 353 Ill. 534.

It is our conclusion that the acts of offering for sale and selling and dealing in markers and monuments by the defendant for installation and use in its cemetery, admitted by the answer, are a usurpation of power not granted by its charter. The judgment of the superior court of Cook County is accordingly reversed and the cause remanded, with directions to vacate its order dismissing the complaint and to take further proceedings not inconsistent herewith.

*Reversed and remanded, with directions.*

Per CURIAM: After allowance of a petition for rehearing on July 13, 1954, this case has been reconsidered and the foregoing opinion is reaffirmed and readopted.

Mr. JUSTICE HERSHEY, dissenting:

The majority opinion sanctions a far-reaching extension of the remedy of *quo warranto,* which I believe was not

contemplated by the legislature and which is contrary to long-established principles of law.

Section 2 of the Quo Warranto Act of 1937 (Ill. Rev. Stat. 1953, chap. 112, par. 10,) provides: "The proceeding shall be brought in the name of the People of the State of Illinois by the Attorney General or State's Attorney of the proper county, either of his own accord or at the instance of any individual relator; or by any citizen having an interest in the question on his own relation, when he has requested the Attorney General and State's Attorney to bring the same, and the Attorney General and State's Attorney have refused or failed so to do, and when, after notice to the Attorney General and State's Attorney, and to the adverse party, of the intended application, leave has been granted by any court of competent jurisdiction, or any judge thereof." Since the Attorney General and the State's Attorney of Cook County refused to file the complaint, the question is whether, within the meaning of the foregoing section, the plaintiff has such an interest as to entitle it to bring the action on its own relation.

First, what is the interest of the plaintiff in the charter powers of the defendant, which the plaintiff alleges entitles it to maintain the action on its own relation? The complaint alleges that the plaintiff is engaged in selling grave markers, monuments and other memorials in Chicago, with its principal office in Chicago and across the street from the defendant cemetery; that the defendant sells such memorials to its lot owners for erection on their lots in said cemetery; that by engaging in such activity the defendant takes business away from the plaintiff which it might otherwise obtain for itself; and that such competition by the defendant has caused the plaintiff's sales to decline and if permitted to continue the plaintiff will be compelled to discontinue its business with resulting financial loss. In short, the plaintiff and defendant are competitors.

Therefore, the particular question presented is: does the plaintiff, by reason of its being in competition with the defendant in regard to the activity complained of, have the requisite "interest in the question" as to entitle it to maintain the instant proceeding?

In order to better understand our statute regarding the "interest in the question" necessary to sustain the plaintiff's position, it is helpful to consider briefly the general prevailing law pertaining to one's right to complain of the *ultra vires* acts of a competitor.

It is stated in 13 American Jurisprudence, Corporations, at page 792: "As a general rule, the mere fact of competition with one's business, which results from the *ultra vires* act of a corporation, does not entitle such person to challenge the power of the corporation to engage therein." Similarly, in 7 Fletcher Cyclopedia of the Law of Private Corporations, section 3451, the author states: "A stranger whose rights have not been infringed by an *ultra vires* act of a competitor corporation cannot urge *ultra vires* to prevent the latter from acting beyond its powers, unless the right to do so is given by a statute. In other words, a competitor cannot attack acts of a corporation as *ultra vires* merely on the ground of injurious competition, it is generally held, where such acts are neither public nuisances nor trespasses."

A leading case is *New Orleans, Mobile and Texas Railway Co. v. Ellerman*, 105 U.S. 166, wherein the plaintiff sought to enjoin a railroad corporation from building and operating a wharf in the city of New Orleans, contending that such enterprise was not within the powers and privileges conferred upon the railroad by the Louisiana legislature. In holding that plaintiff did not have sufficient legal interest to maintain the suit, the Supreme Court of the United States said at pages 173-4: "The sole remaining question then, is, whether Ellerman, as assignee of the city, has any legal interest which entitles him to enjoin the com-

pany from using its wharf as a public wharf beyond the limits of such use, as defined by that construction of the joint resolution. If he has such interest, it can only consist in preventing competition with himself as a wharfinger, which such more extensive use of the railroad property would create. And if the right to assert it exists, it must rest, not upon the claim that the premises are thus used for purposes to which they might not be lawfully devoted if owned and used by a natural person, but on the allegation merely that such use is beyond the corporate powers of the company. But if the competition in itself, however injurious, is not a wrong of which he could complain against a natural person, being the riparian proprietor, how does it become so merely because the author of it is a corporation acting *ultra vires?* The damage is attributable to the competition, and to that alone. But the competition is not illegal. It is not unlawful for anyone to compete with the company, although the latter may not be authorized to engage in the same business. The legal interest which qualifies a complainant other than the State itself to sue in such a case is a pecuniary interest in preventing the defendant from doing an act where the injury alleged flows from its quality and character as a breach of some legal or equitable duty. A stockholder of the company has such an interest in restraining it within the limits of the enterprise for which it was formed, because that is to enforce his contract of membership. The State has a legal interest in preventing the usurpation and perversion of its franchises, because it is a trustee of its powers for uses strictly public. In these questions the appellee has no interest, and he cannot raise them in order, under that cover, to create and protect a monopoly which the law does not give him. The only injury of which he can be heard in a judicial tribunal to complain is the invasion of some legal or equitable right. If he asserts that the competition of the railroad company damages him, the answer is, that it does not

abridge or impair any such right. If he alleges that the railroad company is acting beyond the warrant of the law, the answer is, that a violation of the charter does not of itself injuriously affect any of his rights. The Company is not shown to owe him any duty which it has not performed."

To the same general effect are the following cases: *Burns* v. *St. Paul Railway Co.* 101 Minn. 363; *Scott-Stafford Opera House Co.* v. *Minneapolis Musician's Ass'n,* 118 Minn. 410; *New Hartford Water Co.* v. *Village Water Co.* 87 Conn. 183; *New England Railroad Co.* v. *Central Railway and Electric Co.* 69 Conn. 47.

In *Toye Bros. Yellow Cab Co.* v. *Cooperative Cab Co., Inc.* 199 La. 1063, decided in 1942, the plaintiff cab company sought to enjoin the operation of a rival cab company on the ground, among others, that it was acting *ultra vires.* The court said at page 1070: "Counsel for the plaintiff contends that the defendant cab company, a non-trading corporation, is acting *ultra vires* and illegally operating a surety or insurance business. Only the State has a legal interest in preventing the usurpation and perversion of its permits, because it is a trustee of its powers, for uses strictly public. The plaintiff is not a stockholder in the defendant Cooperative Cab Company, Inc. The plaintiff has no interest in these questions and cannot raise them in order to create or protect a monopoly which the law does not give it. *New Orleans M. & T. Railroad Co.* v. *Ellerman,* 105 U.S. 166."

In accord with the general rule is *Golconda Northern Railway* v. *Gulf Line Railroad,* 265 Ill. 194, wherein this court refused to allow a competitor to raise the defense of *ultra vires* in a suit to enjoin the defendant from constructing its railroad through a certain pass. It was said at pages 205-6: "The appellant has no such interest as entitled it to enjoin the appellee from constructing a railroad in this pass. The only injury of which it can complain in a judicial tribunal is the invasion of some legal or equitable rights.

It alleges that the appellee is acting beyond its authority under the law because the conveyance under which it claims was beyond the charter power of its grantor to make. This conveyance, however, did not injuriously affect any right of the appellant, and it has, therefore, no ground to complain. Neither the Toledo, St. Louis and New Orleans Railroad Company nor the appellee owed any duty to the appellant in regard to this land or to the title thereto. A stockholder in the grantor company might have an interest in restraining it within the limits of its corporate powers and the State might have an interest in preventing the usurpation and perversion of its franchises, but the appellant has no interest in these questions and cannot raise them to enable it to seize the property which is the real subject matter of the controversy. *New Orleans, Mobile and Texas Railway Co.* v. *Ellerman,* 105 U.S. 166."

Again in *Avery* v. *City of Chicago,* 345 Ill. 640, this court cited and subscribed to the holding of the *Ellerman case,* saying at pages 653-4: "The appellee, upon cross-errors assigned, complains that the circuit court erred in refusing to find, first, that the Midwest Trading and Securities Corporation had no charter or corporate power to enter into the contract with the city, and second, that the company had no right to assign the contract or to permit another to perform it. The question of *ultra vires* may be raised only by the State or by a party who has suffered the invasion of some right by the transgression of corporate power. The State, from which the powers of a corporation are derived, is interested in preventing the perversion and usurpation of its franchises. A stockholder, to enforce his contract of membership, may restrain the corporation within the limits of the enterprise for which it was organized. The appellee has no interest in the Midwest Trading and Securities Corporation and he is a stranger to the contract which invites his objection. He merely avers that the contract is beyond the corporate powers of the company.

A violation of the corporate charter does not of itself injuriously affect any of the appellee's rights and he has, for that reason, no ground for complaint. *New Orleans, Mobile and Texas Railroad Co.* v. *Ellerman,* 105 U.S. 166; *Golconda Northern Railway* v. *Gulf Lines Connecting Railroad,* 265 Ill. 194."

While it is true the foregoing cases were suits in equity to enjoin the *ultra vires* activity, the substance of the inquiry is the same as in the instant *quo warranto* suit; namely, to determine whether the plaintiff has sufficient interest in the question to attack the acts of a competitor for the sole reason they are *ultra vires.* The two types of proceedings in this situation differ only as to relief sought, the one seeking to enjoin the *ultra vires* activity and the other seeking to oust the corporation from the privilege to so act. If the *ultra vires* acts of a corporation cannot be attacked by a stranger in an injunctive action, then the same rule would seem to prevail in a *quo warranto* suit, since in our opinion the interest which one must have to maintain the former is no different than the interest necessary to maintain the latter.

The majority opinion, in discussing the requisite interest necessary to give an individual the right to maintain a *quo warranto* suit on his own relation, says it must be "of such a nature that the usurpation of a public grant, franchise or office has trespassed upon or injured his private, legal or equitable rights as differentiated from the injury to the general public." However, I cannot ascertain from the opinion precisely wherein it is believed any private, legal or equitable *right* of this plaintiff has been trespassed upon or injured. Surely it cannot be said that the plaintiff has a right to be free from competition in selling grave markers, monuments and other memorials to lot owners of Rosehill Cemetery. I am sure the plaintiff could not challenge an individual who sought to engage in said business. Moreover, it is not claimed that the plaintiff has an exclusive

franchise to engage in the monument business, that the defendant has trespassed on its property, or that it has any rights as a shareholder or otherwise in the cemetery or its property which are being impaired by the defendant's actions. Whether as between the State of Illinois and the defendant the latter is violating its charter is a matter that affords the plaintiff no justiciable rights. The plaintiff has no more private, legal or equitable *right* to the patronage of lot owners in Rosehill than it has to the sales any of the other monument companies in Chicago might make to lot owners in Rosehill or to lot owners in any other cemetery. The plaintiff has no standing in court to take advantage of an alleged breach by the defendant of its contract with the State of Illinois for the purpose of securing freedom from competition which the law does not give it. It is significant that the majority opinion does not cite any case holding one is entitled to challenge the *ultra vires* act of a competitor, either in equity or by *quo warranto*.

In conclusion, under existing law to extend the remedy of *quo warranto* so as to permit suits by any individual person or corporation against any competitor to whom he is losing business, where such competitor is engaging in a lawful business open to anybody and is carrying on such a business in a lawful way without trespassing upon or infringing any rights or property of the objector, merely because the competitor is a corporation and acting *ultra vires,* is not warranted. It paves the way for the restraining of competition which is lawful in every way, except it may be *ultra vires,* a question which heretofore has been considered the responsibility of the State to deal with. The practical consequences of such a doctrine appear obvious, and it is believed such consequences will not promote the common good.

In my opinion, leave to the plaintiff to file a complaint in *quo warranto* should not have been granted, and this

being the case, the plaintiff has no right to appeal from an adverse decision. Hence, the motion of the defendant to dismiss the appeal should have been allowed and the appeal dismissed.

Mr. JUSTICE FULTON concurs in the foregoing dissenting opinion.

Mr. JUSTICE KLINGBIEL, also dissenting:

I wish to express my dissent from the majority opinion, not only as to plaintiff's standing to maintain this action on its own relation but also as to the substantive decision that sales of markers and memorials by defendant for use in its cemetery are *ultra vires*. In my opinion the scope to be given to the power to operate a cemetery should not depend upon whether the corporation possesses in addition special privileges not enjoyed by business corporations generally. The majority apparently recognize that as to corporations not in the preferred class of defendant the authority to own and operate a cemetery carries with it the implied or incidental power to sell monuments for installation in that cemetery. But because the defendant corporation possesses certain other and unrelated privileges, it is held that this ordinary rule of construction is not applicable. I fail to see what logical bearing the existence of such additional powers has upon the question of what activities are fairly incidental to a particular business expressly authorized. No doubt a strict construction is to be given the provisions granting special privileges, such as tax exemptions or the right of eminent domain. But the issue here concerns only the ordinary business purpose of operating a cemetery. The determination of whether that purpose fairly includes the furnishing of grave markers or monuments within the cemetery should be made in accordance with the rules of construction commonly applied to such powers. To hold that a given power means one thing when

possessed by corporations with special privileges, and another when possessed by ordinary corporations, is to invite confusion and inconsistency into the law. The economic effect of the special privileges is a question with which this court should have no concern, and cannot provide justification for departing from the ordinary rules in construing powers such as the one here involved. Matters of policy are for the legislature rather than the courts.

*People ex rel. Paxton v. Bloomington Cemetery Assn.* 353 Ill. 534, upon which the majority opinion relies to support its conclusion, presented an entirely different factual situation. In that case the issue was whether the powers granted by the charter included the right to prevent the use of any grave boxes or vaults other than those furnished by the cemetery. Manifestly such a claim goes far beyond the mere right to sell monuments to lot owners desiring to purchase from the cemetery rather than from a separate supplier. The holding that a right of exclusive sale is not an incident to the power to operate a cemetery can provide no authority for a similar conclusion as to the mere right to sell to persons voluntarily choosing to purchase from it.

I think the judgment of the superior court of Cook County is correct, and should be affirmed.