SKOKIE VALLEY PROFESSIONAL BUILDING, INC., *et al.*, Plaintiffs-Appellants, *v.* SKOKIE VALLEY COMMUNITY HOSPITAL *et al.*, Defendants-Appellees.

First District (5th Division)   No. 78-2105

Opinion filed June 15, 1979.—Rehearing denied August 13, 1979.

Samuel H. Young, of Skokie, for appellants.

Robert E. Pfaff, of Chicago (Jenner & Block, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiffs appeal the dismissal of their suit, and the sole issue presented is whether they had standing to challenge the action of the board of trustees of the Skokie Valley Community Hospital (the Hospital) in approving and executing a 50-year ground lease of portions of the land owned by the Hospital to a partnership, Golf Point Medical Center (GPMC).

In count I of their amended complaint, plaintiffs allege that under the lease GPMC agreed to construct and operate a medical office building on the premises for the benefit of their limited partnership, of whom 17 are members of the Hospital medical staff and 12 of those 17 presently office in Skokie Valley Professional Building (SVPB), one of the plaintiffs herein; that the lease was not an arms-length transaction; that members of the Hospital medical staff, in derogation of a fiduciary relationship, pressured the board of trustees to acquiesce in the lease so that GPMC could construct the medical building; that the lease places a hospital asset valued at $450,000 at the disposal of a minority of the medical staff on a rent-free basis; that in exchange for the lease, the hospital is to receive 50% of the net profits generated by the medical building, thus involving the hospital in a profit-seeking venture in contravention of its articles of incorporation and bylaws; and that other provisions of the agreement· require the Hospital to move radiology equipment valued at $85,000 to the new medical building, to rent space for such equipment—although space is available within the Hospital, and to allow private patients of the doctors officed in the new building to be serviced by such equipment as well as by a radiologist under an exclusive service contract to the Hospital. Additionally, the amended complaint alleges that defendant Leonard Berlin, M.D., is a member of the Hospital board of trustees and president of its medical staff; that he has a contract with the Hospital to provide radiologist services to its patients, for which he receives 33 1/3% of the gross hospital billing for those services; that as radiologist, he stands to profit also for servicing the patients of other physicians who will office in the building; and that, in breach of his fiduciary obligation, he urged the construction of the GPMC building and voted for the ground lease in question despite the clear conflict of interest.

As to Young's standing to sue, we note that count I of the amended complaint which sought an injunction and rescission of the ground lease on an ultra vires basis alleged that the Hospital's articles of incorporation provided for three types of membership; i.e., active members (who possessed voting privileges), honored members, and founder members; that the bylaws required the election of at least 25 active members from those "persons who by word and deed have demonstrated a constructive

interest in the [Hospital] and were of high standing and repute in their community, and who contributed to the [Hospital] at least $100 in the year immediately preceding their election"; that such election is to be by a two-thirds affirmative vote of the board of trustees; that persons who have contributed $1,000 to the Hospital become honored members; that those who contributed $25 to the original building fund were founder members; that on October 14, 1975, the bylaws were amended to eliminate the required annual contributions of $100 by active members and to replace the honored member classification with donor member status for those contributing an aggregate of $1,000; that on or about February 8, 1966, the Hospital board of trustees adopted a program known as the "Friends of Skokie Valley Community Hospital," whereby subscriber memberships were granted to those who contributed $100 to the Hospital; that Young initially contributed $100 to the Hospital's building fund, had actively solicited contributions from others to such fund, and made further contributions of $100 per year in 1977 and 1978; and that, pursuant to statute (Ill. Rev. Stat. 1977, ch. 32, pars. 163a1(f), 163a5(a)), members (meaning those having membership rights in the Hospital according to the provisions of its articles of incorporation or bylaws) may maintain a proceedings against the corporation to challenge the transfer of real or personal property by the Hospital on grounds such transfer was ultra vires.

Concerning the standing of SVPB to maintain suit against the Hospital, it was further alleged in count I that SVPB was incorporated in 1976 for the purpose of owning and operating a professional building constructed on land purchased in 1962 from the Hospital; that such building provides office space to members of the Hospital medical staff on a first option basis; that the structure is located on land contiguous and adjacent to that owned by the Hospital; and that 12 of GPMC's 17 limited partners presently rent office space from SVPB.

Count II is a derivative suit brought by Young on behalf of the Hospital. After realleging all the matter contained in count I with the exception of references to SVPB's standing, it was then alleged that upon receiving notice that the Hospital had applied to the Village of Skokie for a special use permit to construct a medical office building on its grounds, Young advised Jack Mably (president) and the Hospital's board of directors of his objections to the ground lease and the construction of a medical building on hospital grounds for purposes of profit; and that while Young subsequently requested the opportunity to present those objections to the board of trustees, he was given an audience only by a small minority of trustees. In any event, at this meeting Young alleges he objected to the lease and proposed construction on grounds that the arrangement was not an arms-length transaction; that its terms allowed GPMC to take unfair advantage of the Hospital; that it would not have

been agreed to were it not for the pressure brought to bear by the special interests of those who stood in a fiduciary relationship with the Hospital; that his request to address the entire board was denied by Mabley; that thereafter, the board of trustees on May 1, 1978, approved the ground lease which rendered futile any petition to rescind such lease; that such lease placed valuable assets of the hospital at the disposal of 17 members of its medical staff (the entire staff numbering 300) and enabled them to construct an office building which would be profitable to such members while operating to the detriment of the Hospital.

OPINION

On the question of Young's standing to challenge an ultra vires act of the Hospital or to proceed derivatively on its behalf against a trustee who exceeded his authority, the General Not for Profit Corporation Act (Ill. Rev. Stat. 1977, ch. 32, par. 163a *et seq.*) (the Act) is controlling. In pertinent part, the Act provides:

> "No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer, but such lack of capacity or power may be asserted:
>
> (a) In a proceeding by a member or a director against the corporation to enjoin the doing of any act or acts or the transfer of real or personal property by or to the corporation. * * *
>
> (b) In a proceeding by the corporation, whether acting directly or through a receiver, trustee, or other legal representative, or through members in a representative suit, against the officers or directors of the corporation for exceeding their authority." (Ill. Rev. Stat. 1977, ch. 32, par. 163a5(a), (b).)

The use of the term "Member" in the Act is defined as follows:

> " 'Member' means a person having membership rights in a corporation in accordance with the provisions of its articles of incorporation or by-laws." (Ill. Rev. Stat. 1977, ch. 32, par. 163a1(f).)
>
> "A corporation may have one or more classes of members. The designation of such class or classes and the qualifications and rights of the members of each class shall be set forth in the articles of incorporation or the by-laws. A corporation may issue certificates evidencing membership therein." Ill. Rev. Stat. 1977, ch. 32, par. 163a7.

Initially, it should be noted that copies of the Hospital's articles of incorporation or bylaws were not made part of the record. What we know of the provisions of such documents is limited to the allegations of

the amended complaint whereby Young asserts, and defendants do not deny, that by virtue of contributions made to the Hospital he became a founding member thereof and, as a result of a program adopted by the Hospital board of trustees, he also became a subscriber member. Thus, he argues he was a member of the Hospital, as that term is used in the Act, and as such had the necessary standing to challenge an ultra vires act and to proceed derivatively against a trustee who exceeded his authority. To the contrary, defendants posit (1) that unrestricted contributions give no standing to sue and that the term "member" as used in the Act refers only to "active members" since, as stated in their brief, "under the provisions of the Hospital articles of incorporation only 'active members' are voting members"; and (2) that section 6(a) (Ill. Rev. Stat. 1977, ch. 32, par. 163a5(a)) of the Act "recognizes and equates 'active' members and directors when it permits an ultra vires act to be asserted 'by a member or a director against the corporation.'" Defendants then argue that because Young is neither an active member or a director (trustee), he lacks the necessary standing to bring this action.

■■ Because unrestricted contributions to charitable corporations do not provide donors with standing to challenge ultra vires acts of the corporation (*Holden Hospital Corp. v. Southern Illinois Hospital Corp.* (1961), 22 Ill. 2d 150, 174 N.E.2d 793), we are led to the conclusion that the question of Young's standing depends upon whether, under the definition of member in section 2(f) (Ill. Rev. Stat. 1977, ch. 32, par. 163a1(f)) of the Act, he was "a person having membership rights in a corporation in accordance with the provisions of its articles of incorporation or by-laws."

■■■ Rather than alleging the nature of any membership rights conferred upon him by the articles of incorporation or the bylaws which qualify him as a "member" to give him the standing to sue, Young relies exclusively upon his classification as a founder and subscriber member of the Hospital. Although we disagree with defendants' argument that the only membership right which supports the applicability of section 6(a) or (b) (Ill. Rev. Stat. 1977, ch. 32, par. 163a5(a) or (b)) of the Act is the right to vote and, while it is undisputed that Young has the titles of founder and subscriber member, he has referred us to no membership rights conferred upon those titles by the articles of incorporation or the bylaws. Moreover, we find nothing in the record presented us which gives him any such rights and, accordingly, we find that he does not have the status of member as that term is used in the Act. (Ill. Rev. Stat. 1977, ch. 32, par. 163a1(f).) Consequently, he has failed to bring himself within the parameters of section 6(a) or (b), which provide the requisite standing to challenge an ultra vires act of the Hospital, and to proceed derivatively against one of its trustees who allegedly exceeded his authority.

Therefore, we conclude that the trial court did not err by dismissing so much of counts I and II of the amended complaint as pertained to Young.

■ Concerning the standing of SVPB, it appears that whether any act is ultra vires ordinarily concerns only the corporation itself, the State or those persons having a particular interest or title in the corporation, the property transferred, or subject matter involved. (*Mound City Warehouse Co. v. Illinois Central R.R. Co.* (1964), 51 Ill. App. 2d 103, 200 N.E.2d 919.) Here, however, relying exclusively upon the holding of *People ex rel. J. H. Anderson Monument Co. v. Rosehill Cemetery Co.* (1954), 3 Ill. 2d 592, 122 N.E.2d 283, SVPB contends that it possessed the requisite standing to challenge the ultra vires act of the Hospital. In *Rosehill,* after the refusal of the Attorney General and State's Attorney to file an action in the nature of *quo warranto,* a company in the business of selling tombstones, monuments, and markers, which was located directly across the street from the main entrance to Rosehill Cemetery, instituted *quo warranto* proceedings against the cemetery alleging that its (Rosehill's) sales of monuments, memorials and markers were ultra vires acts in violation of its charter. In affirming the trial court's determination to allow the maintenance of such suit, the supreme court observed that:

"We have had numerous occasions to construe the Quo Warranto Act of 1937 with respect to the right of private citizens to maintain actions thereunder. Our holdings have consistently been that the interest of an individual must be one that is personal to him and not common to the public. It must be of such a nature that usurpation of a public grant, franchise or office has been trespassed upon or injured his private, legal or equitable rights as differentiated from injury to the general public. [Citations.]

✷ ✷ ✷

[I]t appears that plaintiff does have a sufficient individual interest in the question to maintain a *quo warranto* action on its own relation. Its location across from defendant's cemetery, peculiar to it so far as the record shows, and the fact that a majority of its business is derived from owners of lots in such cemetery make its interest different not only from that of the general public but its individual interest differs even from others engaged in a like business." 3 Ill. 2d 592, 595-96, 122 N.E.2d 283, 285.

■ In the instant case, SVPB is admittedly not a member of the Hospital nor does it have any title or interest in the land leased to GPMC. It relies solely on the reasoning of *Rosehill,* asserting that it had a special individual interest in the subject matter because it is located adjacent to the Hospital and 12 of the physicians who rent office space from it will move to the proposed GPMC building. We note, however, that *Rosehill* involved a proceeding under the quo warranto act (Ill. Rev. Stat. 1977, ch.

112, par. 9 *et seq.*) and that section 2 (Ill. Rev. Stat. 1977, ch. 112, par. 10) thereof requires the prior refusal of the Attorney General and State's Attorney to file suit before a private citizen acquires standing to bring a proceeding under that act. In *Rosehill*, there had been such a demand and refusal by those offices which allowed plaintiff there to bring the action. As SVPB has not yet made a demand on such officials to bring this proceeding, we see it as being premature and thus properly dismissed.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.